THE OLD POINT NATIONAL BANK, SOLE REMAINING EXECUTOR OF THE ESTATE OF LEONARD M. NEWCOMB, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89283.   Promulgated February 7, 1939.

*Fred F. Ames, C. P. A.*, for the petitioner.
*Ralph F. Staubly, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in estate tax of $20,190.31.

The decedent, Leonard M. Newcomb, died testate on January 30, 1935, at the age of 57. The estate tax return filed by the executor on behalf of decedent's estate showed a gross estate, consisting principally of real estate and stocks and bonds, of $167,630.42 and a net estate of $161,724.16. In his determination of the deficiency herein the respondent has added to the net estate $140,737.02 representing the value of certain life insurance policies on decedent's life; $3,823 representing insurance premiums refunded; and $26 of disallowed debts of the decedent.

In the petition herein a number of issues are raised, all but three of which have been settled by stipulation. It is stipulated that the above item of $140,737.02 includes Reliance Life Insurance Co. policy No. 438490, which is included in the return and is therefore a duplication, and that the amount of $10,000 should be deducted from the said amount of $140,737.02. It is further stipulated that additional deductions in the aggregate amount of $7,904.59, as itemized in paragraph 6 of the written stipulation, are allowable in the recomputation of the tax due. It is further stipulated that a credit should be allowed for the state inheritance taxes paid, the amount of which is to be determined later. The issues remaining for our determination are (1) whether the proceeds of nine life insurance policies referred to in a certain trust agreement are includable in his gross estate; (2) whether certain payments made by the executor of decedent's estate for the support of his widow and children and for home maintenance are deductible from the gross estate; and (3) whether there may be deductible from the gross estate the value at the date of decedent's death of a bequest of $100 per month payable on condition to the Phoebus M. E. Church.

It is stipulated that:

8. The insurance policies taken out by the decedent, the proceeds of which have been included by respondent in the decedent's gross estate, were as follows:

Reliance Life Insurance Company:

| | | |
|---|---|---|
| No. 428769 | $45,000.00 | |
| No. 438490 | 10,000.00 | |
| No. 438491 | 10,000.00 | |
| No. 438492 | 35,000.00 | |
| | | $100,000.00 |

Equitable Life Assurance Society:

| | | |
|---|---|---|
| No. 2575522 | | 20,262.72 |

Connecticut Mutual Life Insurance Company:

| | | |
|---|---|---|
| No. 626945 | $10,000.00 | |
| No. 629120 | 20,000.00 | |
| | | 30,000.00 |

Prudential Life Insurance Company:

| | | |
|---|---|---|
| No. 2088742 | $5,000.00 | |
| No. 2106336 | 10,000.00 | |
| Dividend added | 198.57 | |
| | | 15,198.57 |

Metropolitan Life Insurance Company:

| | | |
|---|---|---|
| No. 398870-A [3981870-A] | | 10,183.56 |

Mutual Life Insurance Company of N. Y.:

| | | |
|---|---|---|
| No. 2283256 | | 5,092.17 |
| Total | | $180,737.02 |
| Less Exemption | | 40,000.00 |
| Amount of Insurance in Controversy | | $140,737.02 |

The policies issued by the Reliance Life Insurance Company were non-participating, that is, no dividends were distributable under the terms of same. The other policies listed above were participating and paid dividends which were used for reducing the amount of the premium paid by the insured. Some of the policies had premium waiving disability clauses, that is, upon the total and permanent disability of the insured, no premiums would be due and payable on such policies.

On December 2, 1932, more than two years prior to his death, the decedent entered into a trust agreement with the Old Point National Bank, trustee, which provided in part as follows:

TRUST AGREEMENT

THIS AGREEMENT, made and entered into this 2nd day of December, 1932, by and between Leonard M. Newcomb of Phoebus, County of Elizabeth City, and State of Virginia, hereinafter for convenience called the "Insured," party of the first part; and The Old Point National Bank of Phoebus, Virginia, a corpora-

tion created and existing under the laws of the United States of America, or its successors or assigns, hereinafter for convenience called the "Trustee," party of the second part:

WHEREAS, the Insured desires to establish with the Trustee what is known as an Insurance Trust and for that purpose has caused to be made payable, or will hereafter make payable, to the Trustee the following described insurance policies, to-wit:

| Name of Policy | Name of Company | Amount |
|---|---|---|
| 629120 Connecticut Mutual | | $20,000.00 |
| 626945 Connecticut Mutual | | 10,000.00 |
| 2106335 [2106336] The Prudential | | 10,000.00 |
| 2088742 The Prudential | | 5,000.00 |
| 2283256 Mutual Life of N. Y. | | 5,000.00 |
| 3981870 [3981870-A] Metropolitan | | 10,000.00 |
| 428769 Reliance Life Ins. Co. | | 45,000.00 |
| 428491 [438491] Reliance Life Ins. Co. | | 10,000.00 |
| 438492 Reliance Life Ins. Co. | | 35,000.00 |
| Total | | $150,000.00 |

Now THEREFORE THIS AGREEMENT WITNESSETH: *That upon the death of the Insured the proceeds of such of said insurance policies as are then payable to the Trustee* shall be received by the Trustee and held and administered by it upon the terms and conditions hereinafter set forth in this agreement.

### ARTICLE ONE.

The duty and responsibility concerning the payment of premium and other charges on said policies during the lifetime of the Insured shall rest solely upon the Insured. The trustee shall in no way be bound to pay the premiums on said policies nor to see that any of said policies are kept in force, and in general the Trustee shall be under no obligation whatever in respect to said policies or any of them during the lifetime of the Insured.

*The Insured does hereby make this trust an irrevocable trust and surrenders the right during his lifetime to in any way change the beneficiaries* or any of the other provisions of this trust or to change the beneficiaries in any of the said insurance policies and does hereby surrender the right to terminate, alter, revoke, or modify this agreement in whole or in part. The Insured, does, however, *reserve the right during his lifetime to receive all dividends and disability benefits or privileges* of any kind which may accrue or be available on account of said policies during his lifetime *and with this exception surrenders all other rights under the policies to the end that this trust be irrevocable.*
(b) The Insured further reserves the right from time to time to deposit with and make payable to the Trustees other insurance policies to be held and administered pursuant to the terms of this agreement provided, however, that the duties and responsibilities of the Trustee shall not be materially increased without its consent.

If at the time of the death of the Insured there are any life insurance policies on the life of the insured payable to the Trustees which are not specifically enumerated or mentioned either in this agreement or any amendment thereof, then the Insured hereby declares that it is his intention to include in this agreement the proceeds of such policies as fully as though they were specifically mentioned herein.

ARTICLE TWO.

*If at the time of the death of the Insured this agreement is still in force and effect* then the Trustees shall upon the death of the Insured, collect and receive any and all sums of money payable under such of the said life insurance policies as are at that time payable to the Trustee, and such sums which so received shall be and become a Trust Fund, and be held and administered as hereinafter set forth in this agreement, and the Trustee shall have full authority to invest said trust fund and from time to time alter, change and vary such investments and re-investments thereof, but at all times limiting such investments and re-investments to which is known as legal investments for trust funds under the laws of the commonwealth of Virginia. [Italics ours.]

The trust fund was to be divided into three equal parts, one for each of the decedent's three children, Bertha E. Newcomb, Betty Jane Newcomb, and Leonard M. Newcomb, Jr. The income from the trust was to be expended for the benefit of such children or, after they reached the age of 21 years, paid to them direct for life, except that the corpus of the son's share at the discretion of the trustees might be delivered to him after he reached the age of 30. Upon the death of the beneficiaries the trust funds were to go to their heirs or legatees. In no event was any of the trust property to revert to the decedent or his estate.

It is stipulated that at the time the decedent executed the trust agreement on December 2, 1932, "he was in good health; that the execution of the trust was not prompted by any condition of body or mind, as would have led him to believe that death was imminent or near at hand, or that he could reasonably expect death within the reasonable distant future."

All of the nine policies referred to in the trust agreement were ordinary life policies upon which an annual premium was payable during the life of the insured. The first six, or those issued by the Connecticut Mutual Life Insurance Co., the Prudential Insurance Co. of America, the Mutual Life Insurance Co. of New York, and the Metropolitan Life Insurance Co., were participating policies issued by mutual companies. In every case the policy dividend payable at the end of each year was applied in reduction of the premium payable for the succeeding year.

Connecticut Mutual Life Insurance Co. policy No. 629120 was issued February 29, 1928. The beneficiaries named in the policy were "The Insured's executors, administrators, or assigns (subject to the rights of the Insured as hereinafter reserved to change any beneficiary or mode of settlement)." On December 3, 1928, the beneficiaries were changed to "Old Point National Bank of Phoebus, Virginia, Trustee, its successors or successor in Trust." The policy had a cash

surrender value and provided for loans upon the policy on the proper assignment thereof. The policy provided:

*Change of Beneficiary.* Subject to the rights of his assignee if any, the Insured may at any time change any beneficiary by filing written notice thereof at the Home Office of the Company on its form therefor, accompanied by the Policy for suitable endorsement by the Company, such change, when so endorsed, to be effective as of the date of the execution of such notice by the Insured.

Connecticut Mutual Life Insurance Co. policy No. 626945 was issued February 6, 1928. The beneficiary named in the policy was "Old Point National Bank of Phoebus, Virginia, Trustee (subject to the rights of the Insured as hereinafter reserved to change any beneficiary or mode of settlement)." The policy contained the same provisions with respect to change of beneficiary as policy No. 629120. There is no record that the insured ever relinquished his right to change the beneficiary.

Prudential Insurance Co. of America policy No. 2106336 contained the following provisions:

PROVISIONS AS TO TOTAL AND PERMANENT DISABILITY:
WAIVER OF PREMIUMS, PAYMENT OF INSURANCE.

If the Insured shall furnish due proof to the Company that, while this Policy was in full force and effect, he (or she), at any time after payment of the first premium on the Policy, from any cause whatsoever had become permanently disabled or physically or mentally incapacitated to such an extent that he (or she) by reason of such disability or incapacity is rendered wholly and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value, the Company will waive the payment of any premium or premiums under the Policy the due date of which, as specified on the first page hereof, shall occur after the receipt of proof of such disability and while such disability continues. Without prejudice to any other cause of disability, the permanent loss of the sight of both eyes, or loss by severance of both hands above the wrists, or of both feet above the ankles, or of one hand and one foot, shall be considered disability or incapacity within the meaning of this provision.

If such disability shall occur before the Insured is sixty years of age the Company will, in addition to such waiver, during such disability, pay to the Insured at the Home Office of the Company the amount insured, less any indebtedness, in one hundred and twenty monthly instalments during ten years, each instalment of the amount of $9.74 per $1,000 of insurance payable; the first instalment to become payable three months after the Company shall have received such proof and subsequent instalments monthly thereafter. In lieu of monthly instalments the Insured shall have the privilege of receiving the said amount in annual, semi-annual or quarterly instalments payable during ten years, each instalment of the amount, respectively, of $116.18, $58.25 or $29.16, per $1,000 of insurance payable, the first instalment to be payable at the same time as provided for the first monthly instalment. The Insured shall not have the right to commute any instalments. Endorsement to the effect

that the amount of insurance has become payable as herein specified shall be made on the Policy by the Company before the first instalment shall become payable.

\*　　\*　　\*　　\*　　\*　　\*　　\*

### LOAN PROVISIONS.

If this Policy be continued in force, the Insured may borrow from the Company, without the consent of the beneficiary, if any, named herein, with interest at the rate of six per cent. per annum, payable at the end of each policy year, on the sole security of this Policy, an amount up to the limit of the Cash Surrender Value hereinafter specified after deducting therefrom all other indebtedness on account of this Policy, by making written application for the loan and assigning the Policy to the Company as security. \* \* \*

Prudential Insurance Co. of America policy No. 2088742 contained provisions relative to policy dividends. Such dividends paid upon the policy during the life of the decedent were applied in the reduction of premiums.

Mutual Life Insurance Co. of New York policy No. 2283256 issued January 17, 1916, was made payable upon the death of the insured to the insured's "executors, administrators or assigns beneficiaries, with the right to the Insured to change the beneficiary." On December 30, 1932, the insured named the Old Point National Bank of Phoebus, Virginia, as beneficiary and there is a notation on the policy that "The right to revoke this designation of beneficiary is reserved to the Insured." On January 25, 1933, the insured assigned all of his "right, title and interest in policy No. 2283256 issued by The Mutual Life Insurance Company of New York", to the Old Point National Bank of Phoebus, Virginia, trustee, and this assignment was accepted by the insurance company.

Metropolitan Life Insurance Co. policy No. 3981870–A, issued May 28, 1924, was made payable upon the death of the insured to "The Estate of the Insured, Beneficiary, upon receipt of due proof of the death of the Insured and upon the surrender of this Policy. The right on the part of the Insured to change the Beneficiary, in the manner hereinafter provided, is reserved." The policy gave the insured several options, among which were that the insured might surrender the policy and receive the cash value thereof or borrow upon the security of the policy. There was endorsed upon the policy the following:

In compliance with the written request of the insured it is hereby declared that the amount due at the death of the said insured shall be payable to

The Old Point National Bank, Phoebus, Virginia, and successor in Trust; as Trustee under Agreement bearing date of December 2, 1932, executed by the insured under the policy, and The Old Point National Bank, Trustee. Without the right of revocation.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Dated at New York, this 28th day of December, 1932.

Reliance Life Insurance Co. policies Nos. 428769 and 438491 each contain the following endorsement:

January 13th, 1933.

For Value Received I hereby assign and transfer unto The Old Point National Bank of Phoebus, Virginia, as Trustee all my right, title and interest in Policy No.        , issued by the RELIANCE LIFE INSURANCE COMPANY of Pittsburgh upon the life of Leonard M. Newcomb of Phoebus, Virginia, and dated the       day of       , 193   .

These assignments were accepted by the Reliance Life Insurance Co. on January 21, 1933.

Reliance Life Insurance Co. policy No. 438492 shows the following endorsement:

Pittsburgh, Pa., January 20, 1933.

At the request of the Insured, the beneficiary under this policy is hereby changed to Old Point National Bank, Phoebus, Va., as Trustee, Without the right of revocation.

The decedent executed a will on January 19, 1935, leaving the residue of his estate in trust for the benefit of his wife and others, including the Phoebus M. E. Church, with the remainder over to his three children. The will provides in paragraphs sixth and seventh as follows:

SIXTH: I hereby direct that the Trustee pay to my wife, Rebecca Newcomb, two hundred dollars ($200.00) monthly during her lifetime for her sole benefit, payments to begin immediately and from the time of my death. Should the income from my estate fail to provide the $200.00 monthly income to Rebecca Newcomb, my wife, during her lifetime, the Trustees are to provide this amount of income for her during her lifetime through the sale of bonds or other personal property that I may be possessed of, as they may elect.

SEVENTH (A): I direct my Trustees to pay to the Phoebus Methodist Episcopal Church monthly a monthly income of $100.00 as long as the Church is properly kept up and maintained and so long as other contributions and support are forthcoming. If the present standing and size of the Church, both in regard to the number of congregation and income, is not maintained I authorize and direct my Trustees to reduce this bequest or contribution accordingly; and I give them full and complete authority and power in determining whether such a reduction shall be made and if so the amount.

SEVENTH (B): I direct my Trustees to pay to my sister, Martha Jane Gates, one hundred dollars ($100.00) monthly during her lifetime, the payments to begin immediately upon my death.

SEVENTH (C): In the event the income from my estate at any time shall not be sufficient to take care of the provisions I have made for my wife in paragraph Sixth of my Will and the two bequests contained above in Seventh A and Seventh B I direct the income first to be applied towards paying in full the income I have provided for my wife monthly and that the other bequests contained in Seventh A and Seventh B be reduced proportionately.

In paragraph eleventh it is provided:

ELEVENTH: I direct that at the death of my wife, and after my son, Leonard M. Newcomb, Jr., has reached the age of thirty years, or thereafter, that a distribution of the balance of the estate be made, my son, Leonard M. Newcomb, Jr., to receive one-third (⅓) of the remaining estate, my daughter, Betty Jane Newcomb, to receive one-third (⅓) of the remaining estate, my daughter, Bertha E. Newcomb Bird, to receive one-third (⅓) of the remaining estate. * * *

It is stipulated that:

9. Payments to date to the Phoebus M. E. Church, in accordance with the decedent's will, have been made in the specified amount of $100.00 per month for the months from February, 1935, to April, 1938, both inclusive, the total amount being $3,900.00.

10. During the period from the decedent's death to June 1, 1937, as of which date settlement was made with Mrs. Newcomb, the decedent's widow, she having renounced the will and having demanded her dower under the Virginia statute, the following payments were made pursuant to the provisions of the decedent's will, and such expenditures were approved and allowed by order of the Circuit Court of Elizabeth City County, Virginia:

| | |
|---|---|
| Cash paid to Mrs. Newcomb | $5,800.00 |
| Home Maintenance and Repairs | 11,713.97 |
| Educational Expense of Children | 3,668.28 |
| TOTAL | $21,182.25 |

The first question to be decided is whether the nine life insurance policies named in the trust agreement of December 2, 1932, are includable in decedent's gross estate. The respondent has determined, as stated in the deficiency notice, that at the time of his death "the decedent possessed valuable incidents of ownership in the policies in question which render the proceeds subject to inclusion in his gross estate." The petitioner alleges in its petition that the respondent erred in so determining. At the hearing the respondent filed an amended answer which reads in part as follows:

5. Respondent avers that the corpus of the trust executed by the decedent on December 2, 1932, is subject to be retained in the decedent's gross estate as the subject of a transfer made in contemplation of and intended to take effect at or after the trustor's death.

6. In support of the allegations contained in paragraph 5 above respondent relies upon the following facts:

That the decedent made no disposition of the trust corpus during his lifetime; that the transfer of the trust corpus was to take effect upon the decedent's death, and pursuant to circumstances then arising; that the transfer was testamentary in character, and therefore designed as a substitute for a will; and that the dominant purpose of the trust was to make provision for the donees after the death of the trustor.

The applicable statutory provisions pertaining to the first issue are found in the Revenue Act of 1926, as amended by section 803 of the Revenue Act of 1932, as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

\* \* \* \* \* \* \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

The Federal estate tax is imposed upon "the transfer of the net estate" of a decedent. Sec. 301 (a) of the Revenue Act of 1926. It follows that there may not be included in the gross estate property once owned by the decedent but transferred by him prior to his death, unless it was transferred "in contemplation of or intended to take effect in possession or enjoyment at or after his death." Insurance policies taken out by a decedent upon his own life are property which is not excepted from this rule. In order that life insurance policies may be included in the gross estate the insured must have some legal incidents of ownership in the policies which pass from him at death. *Chase National Bank* v. *United States*, 278 U. S. 327.

It is the petitioner's contention in this proceeding that the execution of the "trust agreement" by the decedent on December 2, 1932, effected an assignment to the Old Point National Bank of Phoebus, Virginia, of all of his right, title, and interest in and to the nine policies covered by the agreement save only the right during the decedent's "lifetime to receive all dividends and disability benefits or privileges of any kind which may accrue or be available on account" of the policies during his lifetime. The respondent, on the other hand, contends that the execution of the "trust agreement" did not effect an assignment of the policies; that in any event the trust agreement was testamentary in character, was made in contemplation of death, or was to take effect in possession or enjoyment at or

after death; that "at the best, the trust deed, upon its execution, could only operate as an equitable assignment, to take effect as a transfer upon the acquisition of the insurance proceeds."

The so-called "trust agreement" is equivocal. It declares that the insured makes "this trust an irrevocable trust" and then provides in "Article Two" that:

If at the time of the death of the Insured this agreement is still in force and effect then the Trustees shall upon the death of the Insured, collect and receive any and all sums of money payable under such of the said life insurance policies as are at that time payable to the Trustee, and such sums which so received shall be and become a Trust fund, * * *

It is further provided:

* * * That upon the death of the Insured the proceeds of such of said insurance policies as are then payable to a Trustee shall be received by the Trustee * * *

The evidence of record does not show that the decedent at the time of the execution of the trust agreement on December 2, 1932, or at any time thereafter, turned over to the Old Point National Bank of Phoebus, Virginia, any of the life insurance policies covered by the trust agreement. Inferentially the insured retained possession of the policies after the execution of the "trust agreement" the same as before. The policies constituted contracts between the insurance companies and the insured. The insured had rights under the policies. The trust agreement contemplated that the insured should take some action with respect to certain of the policies to transfer the insured's rights in them to the Old Point National Bank, as trustee. Only to the extent that he took such action, either by assigning his rights in the policies to the bank or by making the bank the irrevocable beneficiary of the policies, did the insured transfer his rights in the policies.

The evidence shows that the trust agreement was not executed in contemplation of death. We think that it was not to take effect in possession or enjoyment at or after death with respect to those policies where, pursuant to the trust agreement, the beneficiary was changed to Old Point National Bank, Phoebus, Virginia, or as to those policies which were irrevocably assigned to such bank.

The evidence of record does not give the Board full information with respect to all of the nine policies mentioned in the trust agreement.

With respect to Connecticut Mutual Life Insurance Co. policy No. 629120, the evidence is that the name of the beneficiary was changed to "Old Point National Bank of Phoebus, Virginia, Trustee, its successors or successor in Trust," on December 3, 1928. That, it will be noted, was prior to the execution of the trust agreement of De-

cember 2, 1932. By the terms of the policy the insured had the right to change the beneficiary at any time by filing written notice thereof at the home office of the company. We are of the opinion that the petitioner did not lose his right to change the beneficiary by the execution of the trust agreement. See *Allentown National Bank et al., Executors*, 37 B. T. A. 750. The proceeds of this policy were correctly included in the gross estate by the respondent.

Policy No. 626945 issued by the same company named the beneficiary of the policy of the Old Point National Bank of Phoebus, Virginia, trustee. But the naming of the beneficiary was "subject to the rights of the insured as hereinafter reserved to change any beneficiary or mode of settlement." There is no evidence before the Board that the decedent ever relinquished his right to change the beneficiary. The proceeds of this policy constituted a part of the gross estate of the decedent.

The Prudential Life Insurance Co. of America policy No. 2106336 permitted the insured to receive payments under the policy if he sustained certain disabilities named in the policy. The insured also had the right up to his death to borrow on the policy without the consent of the beneficiary. These are such incidents of ownership as would require the inclusion of the proceeds of the policy in the gross estate. *Chase National Bank* v. *United States, supra.*

The Board is not in possession of complete evidence with respect to Prudential Life Insurance Co. of America policy No. 2088642. Whether the insured had the same right under that policy as under policy No. 2106336 is not in evidence. In neither case do we know whether the Old Point National Bank of Phoebus, Virginia, was ever named the beneficiary; whether the insured had the right to change the beneficiary; or whether he had the right to receive disability payments under the policy without the consent of the beneficiary. For lack of evidence the action of the respondent in including the proceeds of this policy in the gross estate is approved.

Mutual Life Insurance Co. of New York policy No. 2283256 was assigned by the insured to the Old Point National Bank of Phoebus, Virginia, trustee, on January 25, 1933. The assignment was not in contemplation of death and, since it occurred more than two years prior to the date of the death, the action of the respondent in including the proceeds of this policy in the gross estate is reversed.

With respect to Metropolitan Life Insurance Co. policy No. 3981870–A it is to be noted that on December 28, 1932, the insured named the Old Point National Bank of Phoebus, Virginia, or its successor in trust, as the beneficiary under the policy without the right of revocation. This policy carried cash surrender values and loan privileges and provided that policy dividends would be paid upon the policy. Such policy dividends as were paid during the

life of the insured were used by him as a credit against the subsequent annual premium. Such dividends had they been received in cash by the insured would not have constituted taxable income under any of the revenue acts subsequent to 1918. Although section 302 (c) of the Revenue Act of 1926, as amended, requires the inclusion in the gross estate of property transferred by a decedent prior to his death where he retains the right to the income from the property up to the date of his death, the Board is of the opinion that a mere right to receive policy dividends upon an ordinary life policy upon which premiums are to be paid during the life of the insured does not require the inclusion of the proceeds of such an insurance policy in the gross estate. See *D. W. Blacksher et al., Executors*, 38 B. T. A. 998. The payment of a policy dividend by a mutual life insurance company is merely for the purpose of correcting the premium charge. *Lederer* v. *Penn Mutual Life Insurance Co.* (C. C. A., 3d Cir.), 258 Fed. 81; affd., 252 U. S. 523. After the beneficiary of the policy was irrevocably changed to the Old Point National Bank of Phoebus, Virginia, as trustee, the petitioner had no further rights to surrender the policy or to borrow money upon the security of the policy. The action of the respondent in including the proceeds of this policy in the gross estate is reversed.

On January 13, 1933, the insured assigned all of his rights, title, and interest in and to Reliance Life Insurance Co. policies Nos. 428769 and 438491, and with respect to Reliance Life Insurance Co. policy No. 438492 the insured on January 20, 1933, named the Old Point National Bank of Phoebus, Virginia, as trustee, the beneficiary without the right of revocation. The insured had no rights in any of those policies after the date of assignment or the date when the name of the beneficiary was irrevocably changed. The action of the respondent in including the proceeds of these three policies in the gross estate is reversed.

It is stipulated that during the period from the date of decedent's death until June 1, 1937, the date of settlement of the widow's claim for a dower interest in the estate, there was paid out of decedent's estate $5,800 to decedent's widow; $11,713.97 for home maintenance and repairs, and $3,668.28 for educational expense of decedent's children. The petitioner contends that these payments are deductible under section 303 (a) (1) of the Revenue Act of 1926, which provides for the deduction from the gross estate of "such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction."

The respondent's position is that the amounts in question were not paid out of the estate as an allowance for the support of dependents during the administration of the estate but that they were bequests

which were paid pursuant to the terms and provisions of the decedent's will and are therefore not deductible from the gross estate.

The evidence is that after decedent's death his widow continued to occupy and maintain their residence, a 14-room house, on the same scale as before decedent's death. She employed four servants. She testified in this proceeding that the $200 a month paid to her was not sufficient to maintain the home and that some of the large items of expense were paid by the executors. Presumably those expenditures are included in the item of $11,713.97 for "Home Maintenance and Repairs." We are satisfied from the evidence of record that at least $11,281.25 of the total amount of $21,182.25 is a reasonable allowance for the support of decedent's dependents, cf. *Mary M. Buck et al.*, *Executors*, 25 B. T. A. 780; affd., upon this point in *Buck* v. *Helvering* (C. C. A., 9th Cir.), 73 Fed. (2d) 760, and since that amount, and more (exclusive of the $200 per month paid to the widow pursuant to the provisions of the will), was allowed by the laws of the jurisdiction, it is deductible under the statute. However, in its petition the petitioner has claimed the deduction of only $11,281.25 for the support of dependents and on the pleadings no greater amount can be allowed.

The remaining issue involves the deduction of the value at the time of decedent's death of the bequest of $100 a month to the Phoebus M. E. Church. Conditioned upon certain contingencies the payments of $100 per month were to continue from decedent's death until final distribution of the trust estate, which was to be made upon the death of his wife and when his son reached the age of 30. Petitioner contends that the value of the bequest at the time of decedent's death, computed on the basis of a continuation of the payments for a period of approximately 16 years, was $19,200, which it contends is deductible as a charitable bequest. Petitioner admits in its brief, however, that there was no absolute certainty at the time of decedent's death that the exact sum of $19,200 would ever be paid to the church. Under the provisions of the decedent's will the payments are conditional, first, upon the church being "properly kept up and maintained" and "other contributions and support are forthcoming" and, second, upon there being sufficient income from the decedent's estate for the payment of $200 per month to decedent's widow.

In view of these conditions we do not think that it could be ascertained at the time of decedent's death that any definite and certain payments were to be made to the church the value of which could be claimed as a charitable bequest within the meaning of the statute. The respondent is sustained in the disallowance of the deduction of this item.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*