ELEANOR M. SCHWAGER, TRANSFEREE, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1320-72.    Filed August 4, 1975.

*Robert M. Naiman* and *Joel S. Siegel,* for the petitioner.
*Paul G. Topolka,* for the respondent.

GOFFE, *Judge:* The Commissioner determined transferee liability against the petitioner for an estate tax deficiency of $2,176.98 in the estate of David G. Schwager, transferor.

Certain concessions have been made by the parties and will be given effect in the Rule 155 computation. Two issues, one procedural and one substantive, remain for our decision. We must decide whether or not the issuance of an Estate Tax Closing Letter on February 7, 1969, precluded the Commissioner from "reopening" the case and determining a deficiency against the estate of David G. Schwager and whether or not the decedent

retained any significant incidents of ownership in an insurance policy on his life requiring the proceeds of the policy to be included in his gross estate for estate tax purposes.

### FINDINGS OF FACT

Most of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated by this reference.

Eleanor M. Schwager (hereinafter referred to as petitioner) resided in Chicago, Ill., at the time she filed her petition in this proceeding.

Petitioner's husband, David G. Schwager, died on August 27, 1967. Petitioner was appointed executrix of his estate.[1]

In 1950, the petitioner's husband began working as an estimator for Davis & Kreeger Co., a sole proprietorship performing redecorating and painting services. The company was owned by petitioner's brother, Robert Zolla.

In 1957, the decedent, then 43 years of age, proposed that Davis & Kreeger Co. take some steps to ensure his financial security since the company did not have any pension plan then in force. In response to this request, the company applied for a policy of insurance on his life. On February 1, 1957, New York Life Insurance Co. issued its policy on the decedent's life. The applicant and owner of record was Davis & Kreeger Co. It was a split-dollar policy. Thus, there were two beneficiaries. There were two parts to the policy representing the amount to be paid and to whom it was to be paid. The record owner, Davis & Kreeger Co., was to receive the tabular cash value from part A. The balance, part B, was to be paid to the individual beneficiary—the decedent's wife (petitioner herein). In the event of her death prior to the insured's death, the contingent beneficiary was the decedent's son, Richard M. Schwager.

On February 1, 1957, the issue date of the policy, an amendment was added thereto. The pertinent language of the amendment reads as follows:

---

[1] Petitioner has conceded any liability as transferee and beneficiary determined to be due.

## MODIFICATION OF OWNER'S RIGHTS AND ASSIGNMENT
## PROVISIONS

In accordance with the applicant's written request, and notwithstanding anything in this policy to the contrary, part "B" of the beneficiary designation under this policy may not be changed without the written consent of David G. Schwager and the assignment provisions of this policy are hereby modified to provide that the interest of any beneficiary named in part "B" of the beneficiary designation under this policy shall not be subordinate to the interest of any assignee, may not be assigned by the owner, and any assignment of the policy or of any interest therein shall be deemed not to constitute a change of beneficiary thereof. In all other respects, the ownership of policy provision on page 2 of this policy will apply.

I further request that said policy be written with the following designation of beneficiary.

"A" Davis & Kreeger Co., to the extent of an amount equal to the tabular cash value as of the date to which premiums have fallen due and been paid at the time of the insured's death, determined in accordance with the table of cash, loan and non-forfeiture values herein, less any indebtedness, provided, however, that if any premiums for this policy are waived in accordance with its waiver of premium benefit provisions, the interest of Davis & Kreeger Co. as beneficiary hereunder shall be decreased by the amount of the increase in the tabular cash value during the period for which premiums were waived: and

"B" Eleanor M. Schwager, wife of the insured; or, if she shall die before the insured, Richard M. Schwager, son of the insured to the extent of any death benefit proceeds remaining after payment to Davis & Kreeger Co., of its share of such proceeds as stipulated in "A" above. Notwithstanding anything in this policy to the contrary, part "B" of this designation of beneficiary may not be changed without the written consent of the insured.

The annual premium for this policy was paid in each instance by Davis & Kreeger Co. except for the premiums due in 1966 and 1967. These were paid by means of the automatic premium loan provisions of the policy.

After the death of the petitioner's husband and after payment of the outstanding loans and credit for certain adjustments and dividends, there remained $19,307.94 available for distribution. The proceeds were distributed by the New York Life Insurance Co. as follows:

| | |
|---|---:|
| (1) Tabular cash value _____ | $4,900.00 |
| Less: Indebtedness to New York Life Insurance Co. _____ | 1,050.63 |
| Interest on indebtedness_____ | 25.17 |
| Davis & Kreeger Co. Net tabular cash value (beneficiary—part A)_____ | $3,824.20 |
| (2) Eleanor M. Schwager—remainder of face amount (beneficiary— part B)_____ | 15,483.74 |
| Total proceeds paid out _____ | 19,307.94 |

Petitioner, as the executrix of her husband's estate, timely filed a Federal Estate Tax Return (Form 706) with the District Director of Internal Revenue at Chicago, Ill., on November 27, 1968.

The return, in Schedule D, listed seven insurance policies on the life of the decedent, all of which named petitioner as beneficiary. These policies had a total declared value of $27,161.84. Schedule D disclosed the existence of insurance on the decedent's life not included in the return as part of the gross estate in this manner:

The following policy on the decedent's life is not included herein as part of the gross estate because all incidents of ownership were vested in Davis & Kreeger Co., the decedent's employer:
New York Life Insurance Co.
#25 938 006, face amount $20,000
Beneficiaries: Davis & Kreeger Co., employer,
and Eleanor M. Schwager, wife.

Approximately 3 weeks after filing the estate tax return, the petitioner sent a letter dated December 16, 1968, to the Internal Revenue Service office at which the return had been filed. The letter, received December 20, 1968, was for the purpose of amending the previously filed estate tax return. In it petitioner disclosed that two previously estimated expenses were then known. The result of the amendment was to increase the net taxable estate. This caused an increase of $57.80 in tax due— from $11,529.66 to $11,587.46. Interest of 29 cents was added by petitioner bringing to $58.09 the amount sent to the District Director.

The return was accepted as filed by a classifying officer and forwarded to the audit service branch for the issuance of an Estate Tax Closing Letter (Form L-154).

In February 1969, the estate received the Estate Tax Closing Letter which showed a net estate tax of $11,529.66. The letter contained the following language:

If proof of settlement of the Federal estate tax liability is required by a third party, this closing letter, together with cancelled check(s) or receipt(s) showing payment of the net estate tax shown above, and interest and penalties (if any), may be exhibited to such third party as evidence that the Federal estate tax liability has been discharged for the above named estate

On May 7, 1970, petitioner filed her final account and an order of discharge was entered by the Circuit Court of Cook County, Ill. All assets of the estate have been distributed.

On June 2, 1970, an estate tax examiner of the District Director's office telephoned petitioner's counsel regarding an examination of the estate's return. This was the first inspection or examination of any of the records of the estate. Following this contact the petitioner requested that the estate tax examiner and his supervisor submit the case to the Assistant Regional Commissioner for consideration. Such request was denied.

On April 15, 1971, petitioner was sent a preliminary letter (Form L-191A). On May 14, 1971, petitioner's representatives sent a written protest to the District Director.

No settlement was reached and on November 30, 1971, the District Director mailed a statutory notice of transferee liability to petitioner in her capacity as transferee of the assets of the estate.

OPINION

After petitioner, as executrix of the estate of her husband, filed the required Federal estate tax form, she amended the return by letter. The amendment resulted in an increased estate tax due which was paid. Thereafter, petitioner received an Estate Tax Closing Letter which was exhibited to State authorities in order to close the estate. All assets of the estate were distributed to petitioner.

Sixteen months after the receipt of the Estate Tax Closing Letter, the respondent, acting through the District Director, his audit staff, and an estate tax examiner, questioned the correctness of the return previously accepted. Petitioner's requests for

submission of the case to the Assistant Regional Commissioner for a determination as to the correctness of the examiner's actions were denied.

Unable to reach agreement as to the substantive issues involved, the respondent issued a statutory notice of transferee liability to petitioner.

There is no question raised by petitioner as to her liability as transferee of the assets of the estate of her husband. What she does question is the determination of the deficiency against her husband's estate.

Petitioner has raised several issues with respect to the respondent's actions. She initially asserts that because the respondent failed to adhere to his own procedures and rules his actions were incorrect and of no force and effect. Even if the respondent acted properly and in accordance with his procedures and rules, petitioner contends that he is estopped from asserting any liability against her as transferee in view of her detrimental reliance in distributing all the estate assets following receipt of the Estate Tax Closing Letter. Petitioner does not assert that the closing letter is a closing agreement within the meaning of section 7121, I.R.C. 1954.[2]

The final position advanced by petitioner goes to the merits of the dispute. She claims that the Federal estate tax return was correct after its amendment and is still correct because the decedent never possessed sufficient incidents of ownership over the split-dollar insurance policy to warrant its inclusion in his estate under section 2042.

The respondent has replied to these arguments in order. He asserts that petitioner has failed to prove that certain administrative procedures preclude the determination of a deficiency. This is so since the case, in respondent's view, had not been closed after examination. He says this fact makes it incorrect to speak of "reopening the case."

As a further procedural defense, respondent argues that the administrative procedures and rules set forth in Rev. Proc. 68-28, 1968-2 C.B. 912, and the Statement of Procedural Rules in 26 C.F.R. sec. 601.105 (1970), are directory and not mandatory. The only directive language the respondent feels is applicable is that of section 7121 dealing with closing agreements. The Estate

---

[2] All section references herein are to the Internal Revenue Code of 1954 in effect during the taxable years in issue.

Tax Closing Letter does not fall within the intendment of section 7121 and, therefore, that provision does not apply.

With respect to petitioner's assertions of estoppel, respondent argues that it was not pleaded but, even if it were, it was not proved.

On the substantive issue, respondent argues that the decedent did in fact possess sufficient incidents of ownership in the split-dollar insurance policy to require its inclusion in his gross estate. He contends that the "negative power," such as it was, provided the decedent with the ability to protect his interest in the policy.

### Issue 1. Procedural Matters

The directives set forth in both Rev. Proc. 68-28 and the Statement of Procedural Rules, 26 C.F.R. sec. 601.105 (1970), are directory and not mandatory in legal effect. The failure to follow these statements does not impinge on the power of the Commissioner to issue a statutory notice of deficiency or liability. *Rosenberg v. Commissioner*, 450 F. 2d 529, 532-533 (10th Cir. 1971), affg. a Memorandum Opinion of this Court; *Cleveland Trust Co. v. United States*, 421 F. 2d 475, 481-482 (6th Cir. 1970), cert. denied 400 U.S. 819 (1970); *Geurkink v. United States*, 354 F. 2d 629, 632 (7th Cir. 1965); *Robert F. Collins*, 61 T.C. 693 (1974); *Anthony B. Cataldo*, 60 T.C. 522, 523 (1973).

Petitioner, citing *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1969), and *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970), argues that a governmental agency must scrupulously observe the rules, regulations, or procedures it establishes, and that the failure to do so invalidates any action taken in contravention with such rules. We think it sufficient to point out that both *Heffner* and *Leahey* involved prosecutions for criminal tax evasion and the failure of respondent's agents to satisfy the self-imposed strict warnings that were required to be given all such suspects with respect to their constitutional rights. The overwhelming importance of such protection of the constitutional guaranties dictated the result in *Heffner* and *Leahey*. In one case, the court specifically noted that the "result would have been different if the I.R.S. had violated a procedure designed to promote some other agency goal." *United States v. Leahey, supra* at 11. See *Rosenberg v. Commissioner, supra* at 533.

Petitioner points to Rev. Proc. 68-28 as prohibiting the reopening of a closed case absent fraud, clear error, or other circumstances indicating substantial administrative omission. For Rev. Proc. 68-28 to have *any* effect, a case must have been "closed after examination in the Office of a District Director of Internal Revenue." If it were not closed after examination, the reopening procedures cannot apply.

After receipt of the Federal estate tax return in the office of the District Director, the return was accepted as filed by a classifying officer and forwarded to the Audit Service Branch for the issuance of the Estate Tax Closing Letter. Rev. Proc. 68-28, section 3, paragraph .02, states that corrections of mathematical errors are not examinations or reopenings.[3]

Respondent was not required, as a condition of its determination, to obtain the approval of the Assistant Regional Commissioner (Audit) as required in section 4.02 of Rev. Proc. 68-28. The case, never having been closed after examination, does not fall within this procedure. *Pleasanton Gravel Co.,* 64 T.C. 510 (1975).

For the first time on brief, petitioner asserts that she was entitled to an appellate conference pursuant to the Statement of Procedural Rules, 26 C.F.R. sec. 601.106(b) (1970). This issue is not properly before us since it was not timely raised in the petition as an assignment of error. *United Business Corp. of America,* 19 B.T.A. 809, 831 (1930), affd. without discussion of this point 62 F.2d 754 (2d Cir. 1933), cert. denied 290 U.S. 635 (1933). The issue is, therefore, deemed waived and we will not consider it. *Given v. Commissioner,* 238 F.2d 579, 583 (8th Cir. 1956), affg. a Memorandum Opinion of this Court; *Mutual Lumber Co.,* 16 T.C. 370 (1951). This right to an appellate conference, while a useful method for the resolution of a conflict, does not mean that the failure to grant such a conference renders nugatory any later action taken by respondent.

Petitioner's final procedural argument is that respondent should be equitably estopped from asserting any deficiency against the estate because of the lapse of time between the filing

---

[3] Petitioner raises the spectre of an illegal examination of the estate's return. Sec. 7605(b) has as its purpose avoidance of unnecessary and repetitive examinations of a taxpayer's books and records as a means of harassment. See *Robert F. Collins,* 61 T.C. 693 (1974). However, there is no proof of even a first examination of the estate's books and records. Sec. 7605(b) cannot protect this petitioner from examinations of a third party. See *Geurkink v. United States,* 354 F.2d 629, 632 (7th Cir. 1965).

of the estate tax return and the first contact by respondent with petitioner's representatives some 16 months later. During this time, the Estate Tax Closing Letter was issued.

The issue of estoppel was properly raised by petitioner contrary to respondent's contention. Although *Lodi Iron Works, Inc.,* 29 T.C. 696 (1958), requires estoppel to be affirmatively pleaded, the raising of the issue by means of a motion to strike respondent's answer, as was done in the instant case, is sufficient.

Petitioner has not shown a misrepresentation of a material fact by respondent. The estate tax return did disclose the existence of the split-dollar policy and clearly stated that the proceeds of such policy were not included in the decedent's gross estate. Both sides were in full possession of all the facts. What petitioner is actually asserting is that she did not know how the respondent would treat such information. Prior to the expiration of the statute of limitations of section 6901(c)(1), respondent asserted a claim against petitioner as the transferee of the assets of her husband's estate.

The fact that the estate has distributed all its assets to the sole beneficiary and executrix does not constitute a sufficient harmful change in position to justify invoking estoppel against respondent.

The Estate Tax Closing Letter issued to the estate was not a closing agreement within the meaning of section 7121. It is section 7121 which sets forth the procedures under which such a closing agreement may be executed. *Botany Worsted Mills v. United States,* 278 U.S. 282 (1929); *Brubaker v. United States,* 342 F.2d 655 (7th Cir. 1965); *Estate of Ella T. Meyer,* 58 T.C. 69 (1972).

In *Meyer,* this Court refused to find respondent estopped from determining a deficiency against an estate even after the issuance of an Estate Tax Closing Letter. We think no meaningful distinction can be drawn between the issuance of such notice to the estate as opposed to the transferee, especially where the transferee is the sole beneficiary and executrix of the estate.

### Issue 2. Life Insurance Proceeds

Petitioner disclosed the existence of the split-dollar insurance policy and clearly declined to include its value in the gross estate of the decedent. It is petitioner's view that all substantial incidents of ownership had been successfully divested of the

decedent. Petitioner concedes the existence of a negative power—the owner of the policy (Davis & Kreeger Co.) could not change the beneficiary of part B of the policy without the written consent of the decedent. Although the insured decedent could not unilaterally act with respect to the policy, he could *prevent* a unilateral change in one of the beneficiaries.

Petitioner asserts that *Commissioner v. Estate of Noel,* 380 U.S. 678, 684 (1965), held "that estate tax liability of policies 'with respect to which the decedent possessed at his death any of the incidents of ownership' depends on a general legal power to exercise ownership." This general legal power is analogized by petitioner to a power of appointment pursuant to section 2041. That power is not a "general power of appointment" includable in the decedent's estate "if it is not exercisable by the decedent except with the consent or the joinder of the creator of the power." Sec. 20.2041-3(c), Estate Tax Regs.

Petitioner argues that the decedent could not unilaterally alter the beneficiary but to do so he had to secure the consent of the owner of the policy.

Respondent points out that the statement quoted above from petitioner's brief is itself a statement found in *Commissioner v. Estate of Noel, supra* at 684. Respondent then states that the Supreme Court in *Noel* did not analogize the power of appointment of section 2041 with an incident of ownership. Such an analogy and acceptance thereof would have dictated a contrary result. We agree with respondent that the controlling statutory provision is section 2042(2), which provides, in relevant part, as follows:

The value of the gross estate shall include the value of all property—
\* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

Just as section 2042(2) does not define incidents of ownership and section 20.2042-1(c)(2), Estate Tax Regs., does not purport to give an exhaustive listing of them in view of the legislative history of the section, it is not possible to draw a clear line with respect to this issue.

By consenting to a proposed change, the decedent would have been acting "in conjunction with" the owner of the policy to change the beneficiary of the policy. He could have refused to consent to a change but to nothing else. All other rights were denied him by his own choice. The fact that his power was one of a negative cast makes it no less an incident of ownership. The court in *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7, 10 (1st Cir. 1966), said:

The very phrase "incidents of ownership" connotes something partial, minor, or even fractional in its scope. It speaks more of possibility than of probability.

This language makes it plain that it is not the number of powers possessed that is the determining factor. Rather, it is the existence of even a "fractional" power not the "probability" of its exercise that controls. The view of the District Court requiring no inclusion where the incidents of ownership possessed are only nominal was rejected by the Court of Appeals. *Rhode Island Hospital Trust Co. v. United States*, 241 F. Supp. 586, 590 (D. R.I. 1965), revd. 355 F.2d 7 (1st Cir. 1966).

In *Estate of Lumpkin v. Commissioner*, 474 F.2d 1092 (5th Cir. 1973), revg. 56 T.C. 815 (1971), the insured decedent-employee had only the power to select an optional mode of settlement and that only to the extent of altering the payment period to a dictated order of beneficiaries. This "easily" assignable power was viewed as giving the insured a "substantial degree of control" over the policy, *Estate of Lumpkin v. Commissioner, supra* at 1095, requiring inclusion in his gross estate. By viewing the power to select a settlement mode as a substantial right, it follows that such a power constitutes an incident of ownership within the meaning of section 2042(2).

In *Commissioner v. Karagheusian's Estate*, 233 F.2d 197 (2d Cir. 1956), revg. 23 T.C. 806 (1955), the insured "together with his wife and daughter could * * * therefore change the ultimate beneficiary of the insurance policy." In the instant case, the decedent could not, either alone or in conjunction with any other person, change the beneficiary to part B of the policy, but he could *prevent* any change not meeting with his approval. The distinction between the power to make changes and the power to bar change by the expedient of denying permission was found insufficient to alter the result in *Karagheusian's Estate* where the Court of Appeals stated that it made "no difference whether

under the trust instrument the decedent may initiate changes or whether he must merely consent to them." Furthermore, it is the power and not the substantiality of the power that we must look to. See *Goldstein's Estate v. United States,* 122 F.Supp. 677 (Ct. Cl. 1954), cert. denied 348 U.S. 942 (1955); *Nance v. United States,* 430 F.2d 662 (9th Cir. 1970), revg. an unreported District Court decision (D. Ariz. 1968, 21 AFTR 2d 1702, 68-1 USTC par. 12,529).

Although certain powers may be retained which will not constitute incidents of ownership, *Old Point National Bank, Executor,* 39 B.T.A. 343 (1939); *Estate of Chester H. Bowers,* 23 T.C. 911 (1955) (right to receive policy dividends), the ability to bar the change of beneficiary to a part of the policy does, in our judgment, constitute a substantial incident of ownership.

The decedent was the named insured to a policy on his life. The proceeds from the policy were to be paid to his wife. No alteration of this scheme was possible without his consent. By declining to consent to any change in the designation, a valuable economic benefit was available to the decedent. The term "incidents of ownership" "has reference to the right of the insured or his estate to the economic benefits of the policy." Sec. 20.2042-1(c)(2), Estate Tax Regs. Cf. *Prichard v. United States,* 397 F.2d 60 (5th Cir. 1968);[4] *Estate of Myron Selznick,* 15 T.C. 716 (1950), affd. per curiam, 195 F.2d 735 (9th Cir. 1952).

There was no mistake made by the decedent or anyone acting for him with respect to the amendment in the policy made on its issue date. No possibility existed that a suit for reformation could be successfully maintained. The decedent was not possessed merely of the powers given a trustee. *Estate of Bert L. Fuchs,* 47 T.C. 199 (1966); compare *National Metropolitan Bank v. United States,* 87 F. Supp. 773 (Ct. Cl. 1950), with *Kearns v. United States,* 399 F.2d 226 (Ct. Cl. 1968).

We do not think this amendment was a mistake on the part of the decedent. Clearly he knew he was giving his wife the benefits of the insurance policy. However, the retention of the right to bar the change of his determination is a sufficient incident of ownership to require the inclusion of the proceeds in his gross estate.

*Decision will be entered under Rule 155.*

---

[4] See *Estate of Max Krischer,* T.C. Memo. 1973-172.