ESTATE OF MILTON L. LEVY, DECEASED, JOHN LEVY, CO-EXECUTOR, JEFFREY R. LEVY, CO-EXECUTOR, IRIS LEVY, CO-EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2354–75.    Filed September 7, 1978.

*Harold N. Richmond,* for the petitioner.
*Patrick E. Whelan,* for the respondent.

### OPINION

GOFFE, *Judge:* The Commissioner determined a deficiency in petitioner's Federal estate tax in the amount of $42,042.90.

---

Due to concessions by petitioner, the issues for our decision are:

(1) Whether section 20.2042–1(c)(6), Estate Tax Regs., is valid;

(2) If valid, whether section 20.2042–1(c)(6), Estate Tax Regs., as amended in 1974, applies retroactively to petitioner estate; and, if so—

(3) Whether the proceeds of life insurance policies owned by Levy Bros. (80.4 percent of the voting stock of which was owned by decedent) and payable to decedent's widow, are includable in decedent's estate pursuant to section 2042, I.R.C. 1954.[1]

All of the facts have been stipulated and are incorporated herein by this reference.

Mr. Milton L. Levy (decedent) died on November 11, 1970. The appointed and qualified coexecutors of decedent's estate and their respective residences when they filed the petition in the instant case were: Mr. John Levy, West Orange, N. J.; Mr. Jeffrey Levy, Maplewood, N. J.; and Mrs. Iris Levy (widow of decedent), Deal, N. J. The estate tax return was filed with the Internal Revenue Service at Newark, N. J.

At the time of his death decedent owned 80.4 percent of the issued and outstanding voting stock and 100 percent of the issued and outstanding nonvoting stock of Levy Bros. of Elizabeth, New Jersey, Inc. (Levy Bros.). He was never the sole stockholder of the corporation. Levy Bros. owned the following two life insurance policies on the life of decedent:

|  | Policy A | Policy B |
|---|---|---|
| Insurance company | New York Life Insurance Co. | New York Life Insurance Co. |
| Policy number | 27,701,728 | 27,499,704 |
| Face amount of policy | $128,500.00 | $128,500.00 |
| Principal of indebtedness | 32,220.36 | 32,242.19 |
| Interest of indebtedness | 692.96 | 693.43 |
| Amount of accumulated dividends | 5,416.86 | 5,416.86 |
| Amount of postmortem dividends | 921.08 | 921.08 |
| Premiums adjustment mortuary | 2,300.18 | 2,300.18 |
| Amount of proceeds payable | 104,224.80 | 104,302.50 |
| Amount of proceeds payable to Iris Levy, widow | 103,350.50 | 103,350.50 |
| Amount of proceeds payable to Levy Bros., owner | 874.18 | 851.88 |

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

The life insurance policies were characterized as "split-dollar" policies whereby Levy Bros. owned the policies and were entitled to the net interpolated cash value as set forth above ($1,726.06). In addition, Levy Bros. held the right to change the beneficiary of the cash value, the right of assignment, the right of borrowing against the policies, and the right to modify the policies. The decedent, apart from his stock ownership of Levy Bros., had no incidents of ownership in either life insurance policy at the time of his death. Mrs. Levy, decedent's widow, as beneficiary, was entitled to and was paid proceeds from the policies in the amount of $206,701 as set forth above. The beneficiary of the death benefits under the policies could not be changed without the approval of Mrs. Levy.

The proceeds of the policies paid to Mrs. Levy were not included in the estate tax return of decedent's estate. The Commissioner, in his statutory notice of deficiency, determined that the proceeds of the policies paid to Mrs. Levy were includable in decedent's estate pursuant to section 2042.

The issues involved in the instant case deal not only with new regulations adopted under section 2042(2) during 1974 but also with the language of section 2042(2) of the Code, the legislative history relating back to the Revenue Act of 1942, and the original regulations adopted in 1958 under section 2042. For these reasons we feel it appropriate to describe the background which leads up to the adoption of the new regulations in 1974 which constitute the focal point of our decision.

The general rule set forth in section 2042(2) is that if an insured, at the time of his death, possesses any incidents of ownership in life insurance policies, the proceeds from such policies are includable in his gross estate. The predecessor to section 2042(2), sec. 811(g), I.R.C. 1939, provided for the inclusion of life insurance proceeds in a decedent's gross estate if such policy were taken out by the decedent on his own life.[2] As we stated in *Estate of Lumpkin v. Commissioner*, 56 T.C. 815, 822 (1971), vacated and remanded 474 F.2d 1092 (5th Cir. 1973), "The statutory language providing for this inclusion [referring to the

---

[2] SEC. 811. GROSS ESTATE

(g) PROCEEDS OF LIFE INSURANCE.—To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

test of whether a decedent took out a policy on his own life] often presented difficult problems of interpretation and through judicial decisions two tests evolved: 'payment of premiums' and possession of 'incidents of ownership.'" In an effort to eliminate these problems of interpretation, the Revenue Act of 1942 adopted the tests which evolved from judicial criteria. The House and Senate Committee Reports of the Act set forth an explanation relating to the criteria utilized in determining inclusion of insurance proceeds in the gross estate of a decedent, in pertinent part as follows:

> The inclusion in the gross estate of proceeds which are payable to beneficiaries other than the executor is to be determined for the purposes of this section by criteria set forth therein. These criteria are (1) the payment of premiums or other consideration by the decedent for the insurance, and (2) incidents of ownership possessed by the decedent at death. If either of these criteria is satisfied the proceeds are includible in the gross estate. * * *

> There is no specific enumeration of incidents of ownership, the possession of which at death forms the basis for inclusion of insurance proceeds in the gross estate, as it is impossible to include an exhaustive list. Examples of such incidents are the right of the insured or his estate to the economic benefits of the insurance, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign it, the power to revoke an assignment, the power to pledge the policy for a loan, or the power to obtain from the insurer a loan against the surrender value of the policy. *Incidents of ownership are not confined to those possessed by the decedent in a technical legal sense. For example, a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder is an incident of ownership in the decedent.* [H. Rept. 2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 372, 491; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 504, 676–677; emphasis added.]

The adoption of section 2042(2) saw the elimination of the "payment of premium" test thereby leaving the "incidents of ownership" test as the sole criterion for determining whether the proceeds from life insurance should be includable in a decedent's gross estate. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 124, 472–473 (1954). See *Estate of Lumpkin v. Commissioner, supra* at 822. While section 2042(2) applies the incidents of ownership test it does not set forth a definitive list of what constitutes an incident of ownership. Regulations were promulgated in 1958 which, in many respects, incorporated the language of the committee reports accompanying the Revenue Act of 1942. The pertinent part of the 1958 Estate Tax Regulations stated:

> Sec. 20.2042–1(c). *Receivable by other beneficiaries.* (1) Section 2042 requires

the inclusion in the gross estate of the proceeds of insurance on the decedent's life not receivable by or for the benefit of the estate if the decedent possessed at the date of his death any of the incidents of ownership in the policy, exercisable either alone or in conjunction with any other person.

\*     \*     \*     \*     \*     \*     \*

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.

This language is consistent with the legislative history of the Revenue Act of 1942, and the provisions of section 2042(2), in that the test for inclusion of proceeds depends upon who possesses the incidents of ownership. More specifically, if the incidents of ownership are possessed by a corporation owned by decedent, the incidents of ownership are attributed to the decedent, requiring inclusion of the insurance proceeds in the gross estate.

In April 1974, new regulations were adopted with respect to the attribution of corporate incidents of ownership to a stockholder. T.D. 7312, 1974–1 C.B. 277. See *Estate of Huntsman v. Commissioner*, 66 T.C. 861, 873 (1976). These new regulations expand the attribution of corporate incidents of ownership to sole *and* controlling stockholders. Sec. 20.2042–1(c)(6), Estate Tax Regs. (1974). In addition, the new regulations limit the amount which is includable in a decedent's gross estate. Section 20.2042–1(c)(6), Estate Tax Regs., in pertinent part provides:

In the case of economic benefits of a life insurance policy on the decedent's life that are reserved to a corporation of which the decedent is the sole or controlling stockholder, the corporation's incidents of ownership will not be attributed to the decedent through his stock ownership to the extent the proceeds of the policy are payable to the corporation \* \* \* if any part of the proceeds of the policy are not payable to or for the benefit of the corporation, and thus are not taken into account in valuing the decedent's stock holdings in the corporation [see sec. 20.2031–2(f), Estate Tax Regs.] for purposes of section 2031, any incidents of ownership held by the corporation as to that part of the proceeds will be attributed to the decedent through his stock ownership where the decedent is the sole or controlling stockholder. Thus, for example, if the decedent is the controlling stockholder in a corporation, and the corporation owns a life insurance policy on his life, the proceeds of which are payable to the

decedent's spouse, the incidents of ownership held by the corporation will be attributed to the decedent through his stock ownership and the proceeds will be included in his gross estate under section 2042. If in this example the policy proceeds had been payable 40 percent to decedent's spouse and 60 percent to the corporation, only 40 percent of the proceeds would be included in decedent's gross estate under section 2042. * * *

The first question is whether section 20.2042–1(c)(6), Estate Tax Regs., promulgated in 1974, is valid. Petitioner contends that section 20.2042–1(c)(6), Estate Tax Regs., promulgated in 1974, is invalid for a variety of reasons. It argues that the new regulation is inconsistent and out of harmony with the incidents of ownership test set forth in section 2042(2). Petitioner argues that the new regulation ignores the incidents of ownership test in determining the amount of proceeds includable in a decedent's gross estate. Respondent takes the position that the amendment to section 20.2042–1(c), Estate Tax Regs., in 1974, merely expanded the concept in the original regulations by attributing corporate held incidents of ownership to a controlling stockholder, as well as to a sole stockholder, to the extent that the life insurance proceeds are not payable to the corporation or for its benefit. For these reasons respondent urges that this represents an amplification of the prior interpretation rather than a radical departure from it.

In his statutory notice of deficiency, the Commissioner determined that only the portion of the insurance proceeds payable to decedent's widow are includable in the gross estate. That determination is consistent with the regulations as amended in 1974. The other adjustments to the estate tax liability were conceded by petitioner and respondent has not claimed an increased deficiency. If we held that the regulations were invalid and the entire proceeds of the policies were includable, a decision would be entered for respondent but we would be unable to enter a decision for a deficiency large enough to include all of the insurance proceeds in the gross estate. Cf. *H. F. Campbell Co. v. Commissioner*, 54 T.C. 1021 (1970), a supplemental opinion to 53 T.C. 439 (1969), affd. 443 F.2d 965 (6th Cir. 1971); sec. 6214(a), I.R.C. 1954.

To hold the regulations as amended invalid under such circumstances would, therefore, be a hollow gesture and this we decline to do. Nor do we see how the validity of the 1974 amendment to the regulations aids petitioner in its position that the insurance proceeds payable to decedent's widow are not

includable because decedent did not own 100 percent of the corporation's outstanding stock. It is likewise immaterial whether the regulations as amended in 1974 apply retroactively to decedent's estate or whether the regulations before the 1974 amendment apply. The legislative history and the regulations both before and after the 1974 amendment support the Commissioner's determination that the insurance proceeds payable to the widow of decedent are includable although decedent did not own all of the outstanding stock of the corporation. Although the 1974 amendment to the regulations specifically makes them applicable to a controlling shareholder and the regulations prior to the amendment do not specifically apply to controlling shareholders, we conclude that the legislative history supports applicability to controlling shareholders before and after the regulations were amended in 1974.

Section 2042 provides that the value of the gross estate shall include the value of all property:

(1) RECEIVABLE BY THE EXECUTOR.—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

While section 2042(2) does not specifically provide an exhaustive list of what constitutes an incident of ownership it clearly stands for the proposition that if a decedent possesses any incident of ownership, at the time of his death, relating to a policy on his life, the entire amount of the proceeds from such policy will be includable in his gross estate. Moreover, the origin of the "incidents of ownership test" is founded in the Revenue Act of 1942 and was later incorporated in the 1954 Code as the exclusive test for determining the includability of proceeds in a decedent's gross estate.

Petitioner contends that the committee reports of the Revenue Act of 1942, the language of which was adopted in the original regulations of section 2042(2), preclude the attribution of corporate incidents of ownership to any stockholder other than a sole stockholder and that section 20.2042–1(c)(6), Estate Tax Regs., is invalid. Based on this contention, petitioner argues that if Congress intended that attributions apply to a controlling

stockholder it could have included a broader declaration in the committee reports of the Revenue Act of 1942. We do not agree. As discussed above, the committee reports stated that it was impossible to formulate an exhaustive list of incidents of ownership. However, the reports further stated that incidents of ownership are not confined to those possessed by the decedent in a technical legal sense. The reports stated by way of an example that incidents of ownership possessed by a corporation were attributable to the sole stockholder.

The example in the committee reports and the original regulations are an illustration of incidents of ownership not held by a decedent directly in the technical legal sense, just as the power to change a beneficiary, used in the same example, described an example of an incident of ownership. Moreover, the original regulations adopted under section 2042(2) as indicated above, do not set forth a rule that attribution of corporate incidents of ownership applies only to a sole shareholder but, instead, these regulations adopt the example used in the committee reports.

Therefore, the ultimate question for our decision on this final issue is whether a controlling stockholder (80.4 percent of all voting stock in the instant case) is to be treated in the same manner as a sole stockholder for purposes of attribution. We see no distinction between a sole or controlling stockholder with regard to the application of the provisions of section 2042. In either situation the stockholder possesses the power over the activities of the corporation so as to affect the disposition of the insurance proceeds. Clearly, Congress did not intend to attribute corporate incidents of ownership to a sole stockholder while excluding a stockholder owning 99 percent of the voting stock of a corporation, or 80.4 percent in the instant case. Petitioner relies upon *Casale v. Commissioner*, 247 F.2d 440 (2d Cir. 1957), revg. 26 T.C. 1020 (1956), for the proposition that the application of the "sole stockholder example" to a controlling stockholder is inconsistent with the separate entity approach to corporations. However, the holding in *Casale* is inapposite to the facts in the instant case because our focus is limited to the application of section 2042(2). In *Casale*, a corporation purchased a combined life and annuity contract insuring a taxpayer who was the president and majority stockholder (98 percent) of the corporation. Under the provisions of the insurance policy, the corpora-

tion was the designated owner of the policy and held the rights to assign the policy, to change its beneficiary, to receive dividends as declared by the insurer, and to borrow on the policy in an amount not exceeding its loan value. The president and majority stockholder had the right under a compensation agreement to designate a beneficiary in the event he died only after he became entitled to annual annuity payments. We held that the premium payments (made by the corporation) were equivalent to a dividend distribution to taxpayer. On appeal, the Second Circuit Court of Appeals reversed and held that the taxpayer received no immediate benefit from the premium payments and that any rights possessed by the taxpayer were subject to termination prior to his receiving annuity payments in the future. In addition, the court, taking the position that the corporation was not a sham operating as a conduit on behalf of the taxpayer merely because the taxpayer was a controlling stockholder, stated: "We have been cited to no case or legislative proposition which supports the proposition that the entity of a corporation which is actually engaged in a commercial enterprise may be disregarded for tax purposes merely because it is wholly owned or controlled by a single person."

Levy Bros. possessed the right to change the beneficiary of the cash value, the right of assignment, the right to borrow against the policies, and the right to modify the policies. Although the parties did not stipulate the specific terms of the policies, it is apparent that the corporation, by the exercise of its rights in the policies, had the power to realize all or at least the greater portion of the proceeds of the policies prior to decedent's death and thus prevent decedent's widow from receiving much of the insurance proceeds. By his stock ownership, decedent had the power to elect the board of directors who, in turn, had the power to elect corporate officers who would be amenable to decedent's wishes as to the exercise of the incidents of ownership held by the corporation. *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7 (1st Cir. 1966). Decedent could indirectly exercise such power with ownership of less than all of the voting stock.

Petitioner further argues that any incidents of ownership held by a corporation controlled by the decedent are restricted by a fiduciary capacity, citing *Estate of Fruehauf v. Commissioner*, 427 F.2d 80 (6th Cir. 1970), affg. 50 T.C. 915 (1968). In that case, the decedent held the incidents of ownership as cotrustee of a

testamentary trust created in his wife's will. We held that merely because decedent could exercise the incidents of ownership in a fiduciary capacity, nevertheless such capacity was no bar to inclusion by reason of possession of incidents of ownership. The Court of Appeals affirmed but rejected the broad rule we adopted and held that under the special facts of the case the incidents of ownership were attributable to decedent. In the instant case, decedent did not possess the incidents of ownership as a fiduciary. The record is silent as to whether petitioner was an officer or director of Levy Bros., in either event of which he would be in a fiduciary capacity. But it is not contended by either party that the incidents of ownership are attributable to decedent in such a capacity but, instead, by reason of his controlling stock ownership. Even if decedent, as a shareholder, were considered in a fiduciary capacity, it is difficult to see how the corporation or minority shareholders could be injured by exercising the incidents of ownership to defeat the widow. Numerous situations are apparent where it would be in the best interests of the corporation to exercise its incidents of ownership and deprive decedent's widow of the proceeds, i.e., e.g., borrowing against the insurance policies at a lower rate of interest than borrowing from other sources, especially if the loan could be deducted from the proceeds and repayment by the corporation never be required.

Includability of the proceeds under section 2042(2) is based upon stock ownership as demonstrated in its legislative history and not upon retention of control or enjoyment as in section 2036(a)(1). *Estate of Gilman v. Commissioner,* 65 T.C. 296 (1975), affd. 547 F.2d 32 (2d Cir. 1976).

Accordingly, we hold that proceeds of the two life insurance policies on the life of decedent payable to his widow are includable in decedent's gross estate.

*Decision will be entered for the respondent.*