ESTATE OF ALFRED DIMEN, PHILIP WOLITZER, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1985–76.    Filed April 24, 1979.

---

[7]*Rambo v. Commissioner,* 69 T.C. 920 (1978), and *Weidekamp v. Commissioner,* 29 T.C. 16 (1957), are distinguishable on similar grounds.

*Seymour Goldberg*, for the petitioner.
*Paul E. Vignone*, for the respondent.

WILBUR, *Judge:* Respondent determined a deficiency in the amount of $19,914.43 in the estate tax of the Estate of Alfred Dimen. This deficiency was based on the omission from the gross estate of decedent Alfred Dimen of life insurance proceeds in the amount of $66,867.56, under section 2042(2).[1]

Other issues having been settled, we are asked to decide only one question:

Whether Bay Shore, decedent's solely owned corporation, possessed any section 2042(2) incidents of ownership in a life insurance policy on decedent's life sufficient to warrant the inclusion of the proceeds, payable to decedent's daughter, in decedent's gross estate.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is the Estate of Alfred Dimen. Philip Wolitzer, the executor of the estate, resided in Brooklyn, N.Y., at the time the petition was filed in this case. A timely Federal estate tax return (Form 706) was filed with the Internal Revenue Service Center, Mineola, N.Y., Brooklyn District, with payments in the amount of $37,263.28.

Alfred Dimen (decedent), died on March 14, 1972, at the age of 60 years. In 1964, decedent was sole shareholder, as well as president and director, of Accurate Flooring Co., Inc. (Accurate), a New York corporation. On or about June 19, 1964, Accurate[2] acquired a life insurance policy from Mutual Benefit Life

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect at the time of decedent's death, unless otherwise noted.

[2] The application was signed by Alfred Dimen (decedent), as proposed insured, and apparently filled out in part by him as well.

Insurance Co. (Mutual Benefit) on the life of decedent. The policy provided coverage of $65,000, the proceeds being payable at decedent's death as follows: "to the owner [Accurate] an amount equal to the cash surrender value * * * ; the remainder of the proceeds to Muriel Dimen, Daughter of the proposed insured, if living."[3]

On or about July 29, 1964, Accurate entered into an agreement (supplemental agreement), with Muriel Dimen, daughter of decedent, in connection with the policy on decedent's life.[4] The supplemental agreement provided:

(3) By the terms of this letter you [Muriel Dimen] have an interest in the maintenance of the insurance and its payment as a death claim, even though we [Accurate] are the sole owner of the policy. Accordingly, although we possess the rights to change the beneficiary and elect settlement options, we will arrange with the insurance company [Mutual Benefit] to change from time to time, in accordance with your wishes and only with your written concurrence, both the beneficiary of the portion of the proceeds not payable to us and the manner of payment to such beneficiary. We further agree that we will not exercise any of the remaining policy rights or options, or any other incident of ownership of the policy, without your written concurrence or before we give you a reasonable opportunity to become the owner of the policy by the payment to us of the cash surrender value at that time. We will file a copy of this letter, executed by us, with said insurance company as evidence of the foregoing limitations on our policy rights.

The supplemental agreement also provided:

Either you or we may cancel this arrangement on thirty days' written notice to the other. If we give the notice, you will have the option to purchase the policy from us at any time within the thirty-day period upon payment to us of the then cash value of the policy. * * *

The life insurance policy on decedent's life provided for change of beneficiary and election of settlement options before maturity as follows:

From time to time, upon request satisfactory to the Company [Mutual Benefit] received at its home office before maturity,

(a) the beneficiary may be changed; and

(b) the Company will agree to apply at maturity under any one of the settlement options, as provided in and subject to all of the applicable provisions

---

[3]A policy settlement request was made to Mutual Benefit on Nov. 25, 1965, signed by Accurate and Muriel Dimen, containing similar directions as to the payment of the proceeds of the policy if the policy should mature as a death claim.

[4]The form for the supplemental agreement was provided by Mutual Benefit, and only the names and signatures of the parties, plus the date and description of the policy on decedent, appear to have been added by the parties.

of this policy, all or any designated part of the proceeds payable at maturity to a beneficiary who is a natural person taking in his or her own right.

When such a request to change the beneficiary or to apply proceeds under such a settlement option is so received, * * * the earlier designation * * * will then be automatically canceled.

The policy provided not only for change of beneficiary and election of settlement options, but also for change of ownership before maturity; assignment; loans made on sole security of the policy; and surrender for cash before maturity.

In 1969, decedent was the sole shareholder, in addition to being president and director, of Bay Shore Flooring & Supply Corp. (Bay Shore), a New York corporation. Additionally, as of 1969, decedent's holdings in Accurate had decreased and he was then a 75-percent shareholder rather than the sole shareholder. On April 11, 1969, Accurate relinquished to and vested in Bay Shore all right and title and every incident of ownership in the insurance policy.

The absolute assignment was signed by Matthew Savettiere as secretary for Accurate. Muriel Dimen also signed the absolute assignment following the statement: "I, Muriel V. Dimen, hereby consent to the foregoing assignment." The assignment was pursuant to provisions of the policy that state:

From time to time, upon return of this policy for indorsement with a request satisfactory to the Company received at his home office before maturity, *the owner may, without the consent of any beneficiary or any contingent owner*, change ownership, contingent ownership, or both. [Emphasis added.]

As of February 28, 1972, 2 weeks before decedent's death, Bay Shore had borrowed $14,083 against the insurance policy. The cash surrender value of the insurance policy at that time was $17,101.24.[5] The loan was made pursuant to the following provisions: "A loan will be made on the sole security of this policy, upon receipt at its home office of a request satisfactory to the Company [Mutual Benefit]."

The amount of the insurance policy proceeds payable to Bay Shore ($3,307.50) were included in the valuation of Bay Shore as owned by decedent, and were therefore reflected in the gross estate as reported on the return pursuant to section 20.2042–1(c)(6), Estate Tax Regs. This amount is not in dispute.

---

[5]On Bay Shore's balance sheet dated Feb. 28, 1972, the life insurance policy is referred to under "Other Assets" as "Officer's life insurance."

Decedent died on March 14, 1972. On April 21, 1972, Muriel Dimen Schein (formerly Muriel Dimen) filed a proof of death claim with Mutual Benefit for the full amount of the proceeds of the policy in excess of the cash surrender value.

On or about May 31,1972, Mutual Benefit's assistant secretary prepared an Internal Revenue Service Life Insurance Statement (Form 712) attaching a copy of the supplemental agreement and the policy settlement request.

On Schedule D of decedent's Federal estate tax return, the life insurance policy on decedent was reported as being owned by Bay Shore and Muriel (Dimen) Schein, and the total proceeds of $70,175.06 were excluded from decedent's gross estate. Respondent in his notice of deficiency dated December 12, 1975, determined that the amount received by the decedent's daughter, Muriel Dimen, was includable in decedent's gross estate.

## OPINION

This case concerns the appropriate treatment, for estate tax purposes, of a split dollar life insurance policy. The term split dollar insurance covers various policy arrangements under which the employer-corporation and the employee share the cost of the policy premiums. Some part of the policy proceeds, generally to the extent that they exceed the cash surrender value at the date of decedent's death, are payable to a beneficiary designated by the insured. See *Genshaft v. Commissioner*, 64 T.C. 282 (1975); *Schwager v. Commissioner*, 64 T.C. 781 (1975).[6]

Petitioner contends that ownership of the split dollar life insurance policy was divided between Bay Shore and Muriel Dimen, based on the designated payment of proceeds in the supplemental agreement, and hence decedent had no incidents of ownership attributable to him through Bay Shore in the "death benefits portion" of the policy. Petitioner contends that Muriel Dimen's rights in the death benefits portion of the policy were equivalent to those of an irrevocably designated beneficiary, and points out that under the terms of the supplemental agreement, Bay Shore was bound to carry out Muriel Dimen's requests and

---

[6]In the instant case, Muriel Dimen, rather than employee-decedent, was to share the cost. But payment of policy premiums does not, of course, determine the owner of the policy.

directions with regard to the death benefits portion of the policy.[7]

Respondent, on the other hand, argues that Bay Shore retained the incidents of ownership in the life insurance policy as a whole, despite the supplemental agreement, including the right to surrender or cancel the policy; the right to assign the policy; the right to change the beneficiary, as exercisable in conjunction with Muriel Dimen; and the right to borrow money against the policy. Since Bay Shore was decedent's solely owned corporation, respondent concludes that all incidents of ownership retained by Bay Shore at the date of decedent's death are attributable to the decedent under section 2042(2) as provided in section 20.2042–1(c)(2) and section 20.2042–1(c)(6), Estate Tax Regs.[8]

We agree with respondent. In looking not only at the written documents but also at the transactions that occurred, we find that Bay Shore (and thus decedent) did possess incidents of ownership in the policy.

In pertinent part, section 2042(2) requires the proceeds of life insurance on a decedent's life to be included in the decedent's gross estate if the decedent possessed at the time of his death *any* incidents of ownership in the policy, exercisable either alone *or* in conjunction with another person.[9]

---

[7]Petitioner offered in evidence a letter from the Mutual Benefit Insurance Co. stating that it considered Bay Shore's functions with regard to a change of beneficiary and settlement options as "a ministerial function." Respondent objected on the grounds of the parol evidence rule. Whatever deficiencies the document may have, we admit it over the objection that it must be excluded on the basis of the parol evidence rule.

[8]Sec. 20.2042–1(c)(6), Estate Tax Regs., as relevant to the issue before us, provides in part that:

if any part of the proceeds of the policy are not payable to or for the benefit of the corporation * * * *any* incidents of ownership held by the corporation as to that part of the proceeds will be attributed to the decedent through his stock ownership where the decedent is the sole or controlling stockholder. * * * [Emphasis added.]

Petitioner does not contend that the incidents of ownership possessed by Bay Shore were improperly attributed to decedent on the basis of his sole ownership of the corporation, nor does he challenge the validity of sec. 20.2042–1(c)(6), Estate Tax Regs., or its application to decedent. Any arguments which petitioner might have made along this line were clearly disposed of in *Estate of Levy v. Commissioner*, 70 T.C. 873 (1978).

[9]SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

(1) RECEIVABLE BY THE EXECUTOR.—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the

Section 20.2042–1(c)(2), Estate Tax Regs., amplifies the meaning of the term "incidents of ownership":

For purposes of this paragraph, the term "incidents of Ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the *power* to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * * [Emphasis added.][10]

As the First Circuit stated in *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7, 10 (1st Cir. 1966), "The very phrase 'incidents of ownership' connotes something partial, minor, or even fractional in its scope. It speaks more of possibility than of probability." Additionally, these "incidents" need not be exercisable alone, for it is sufficient if they are "exercisable either alone or in conjunction with any other person." Sec. 2042(2). It makes no difference whether the decedent had the power to initiate the exercise of a power or whether his consent is simply required. In this sense, a negative or veto power of the decedent over any of the incidents of ownership is sufficient to require inclusion of the policy proceeds in the gross estate. *United States v. Rhode Island Hospital Trust Co., supra* at 11; *Estate of Karagheusian v. Commissioner*, 23 T.C. 806, revd. 233 F.2d 197, 199 (2d Cir. 1956); *Schwager v. Commissioner*, 64 T.C. 781, 791 (1975).

Petitioner can by no stretch of the imagination prevail pursuant to these principles. Decedent's wholly owned corporation was the owner of the policy subject to any rights ceded to Muriel Dimen by the supplemental agreement. In this agreement Accurate, while noting Muriel Dimen's interest, stated that "we are the sole owner of the policy" and that "we possess

decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

[10]The language of the regulation closely parallels the language of the Committee reports explaining the congressional intent underlying the term incidents of ownership. See H. Rept. 2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 491; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 677. See also *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7, 10 (1st Cir. 1966), vacating 241 F. Supp. 586 (1965); *Estate of Lumpkin v. Commissioner*, 474 F.2d 1092 (5th Cir. 1973) vacating and remanding 56 T.C. 815 (1971). Both of the Committee Reports cited stated that the term "incidents of ownership" include "the right of the insured or his estate to the economic benefits of the insurance, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign it, the power to revoke an assignment, the power to pledge the policy for a loan, or the power to obtain from the insurer a loan against the surrender value of the policy." (1942–2 C.B. at 491, 677.)

the rights to change the beneficiary and elect settlement options." While Accurate agreed to exercise these rights in accordance with Muriel Dimen's wishes and only with her written concurrence, the corporation retained a veto power over any change and its concurrence, as well as Muriel Dimen's was required. (The term "concurrence" clearly contemplates the consent of both parties.)

Any lingering doubts are resolved by reading the remaining portions of the supplemental agreement. Accurate there agreed "not to exercise any of the remaining policy rights or options, or any other incident of ownership of the policy," without the written concurrence of Muriel Dimen or before giving her a reasonable opportunity to become the owner of the policy.[11] It is clear, therefore, that Bay Shore had power over these other incidents of ownership, and that at a minimum these powers were exercisable "in conjunction" with Muriel Dimen. Additionally, it is clear that the decedent's corporations actually exercised some of these incidents of ownership, for Accurate assigned the policy to Bay Shore, and substantial policy loans, outstanding on the date of death, were made in Bay Shore's favor.

Petitioner nevertheless points to Rev. Rul. 76–274, 1976–2 C.B. 278, arguing that respondent therein conceded in circumstances not fairly distinguishable from the facts herein, that insurance proceeds are not includable in the gross estate. In that ruling someone other than the corporate owner was specifically empowered to change the beneficiary and exercise settlement options. Regardless of whether that ruling is correct, it is clearly distinguishable, for there the rights of the corporation were severely restricted under the terms of the rider to (1) borrowing against the policy, up to the extent of the cash surrender value, and (2) assigning the "owner's" rights in the policy to the subowner upon payment of the premium moneys loaned by the corporation. Most significantly, the corporation was specifically prohibited from surrendering the policy for cancellation, and, as designated "owner," was clearly prohibited from taking any action that would endanger the interest of the "subowner" or the payment of proceeds in excess of the cash surrender value.

---

[11]We are aware that Rev. Rul. 79–46, 1979–6 I.R.B. 17, takes the position that the right to purchase the policy (possessed by Muriel Dimen herein) is an incident of ownership. Assuming without deciding that this is correct, the remaining incidents of ownership are nevertheless very substantial.

The "subowner" was specifically empowered to change the "personal beneficiary," and exercise settlement options. Except for the two rights specifically granted to the owner-corporation, the "subowner" was stated to possess the sole power to exercise all rights with respect to the policy.

We note that Bay Shore, the owner in the instant case, retained or possessed considerably greater powers than did the "owner" in Rev. Rul. 76–274, *supra,* and that these powers are specifically enumerated in section 20.2042–1(c)(2), Estate Tax Regs., as "incidents of ownership."[12]

Accordingly, since Bay Shore possessed incidents of ownership in the insurance policy on decedent's life, the proceeds of the policy are includable in decedent's gross estate, by virtue of his sole ownership of Bay Shore.

*Decision will be entered under Rule 155.*

---

[12]Although petitioner attempts by Nathanial Davidoff's labored and confused testimony to show that decedent "intended" Muriel Dimen to be the sole owner of the "death benefits portion" of the policy, it is clear from the terms of the policy and the reservation of the powers in the supplemental agreement, as well as from the exercise of powers herein described, that Bay Shore (and accordingly decedent) was aware of and relied upon its incidents of ownership. As noted, not only did Bay Shore borrow money against the policy, but also Bay Shore was "assigned" the policy by Accurate after decedent's holdings in Accurate had decreased from 100 percent to 75 percent.