T.C. Memo. 2000-20

UNITED STATES TAX COURT

CHARLES AND BEATRICE M. REYNOLDS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12112-97.                    Filed January 19, 2000.

<u>Thomas F. Howard</u>, for petitioners.

<u>Michael F. O'Donnell</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  Respondent determined
deficiencies of $4,732 and $3,092 in petitioners' Federal income
taxes for taxable years 1993 and 1994 respectively.  Respondent

also determined accuracy-related penalties under section 6662[1] of $946 and $618 for 1993 and 1994 respectively.

Respondent concedes that petitioners are entitled to deduct a dependency exemption amount for Mrs. Reynolds' mother for tax year 1993 and that petitioners expended at least $6,125 for her medical expenses in 1993. Respondent also concedes that Charles Reynolds (petitioner) was engaged in the practice of law with a profit motive and for 1993 had $140 of deductible expenses for bar membership fees.

After concessions by respondent, the issues for decision[2] are: (1) Whether respondent is estopped from asserting deficiencies against petitioners; (2) whether respondent has offered evidence of petitioners' tax returns for either year at issue; (3) whether petitioners are entitled to deductions for medical expenses; (4) whether legal expenses incurred by petitioners are itemized deductions or trade or business expenses; (5) whether petitioners are entitled to deduct various Schedule C expenses; (6) whether petitioners are entitled to

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The amount of petitioners' self-employment tax, if any, and their deduction for self-employment tax, if any, will be determined by our resolution of the issues to be decided in this case.

automobile and travel and meals and entertainment expense deductions; (7) whether petitioners are entitled to claim for 1994 an additional expense under section 179 for a depreciable asset; and (8) whether there is underpayment of petitioners' tax due to negligence.

Some of the facts have been stipulated. Stipulated facts and accompanying exhibits are incorporated herein by reference.

FINDINGS OF FACT

Petitioners resided in Lisle, Illinois, at the time the petition was filed in this case.

During the years at issue and at the time of trial, Mrs. Reynolds was a manager for Service America Corp., and petitioner was a supervisory internal revenue agent. Petitioner has been an employee of the Internal Revenue Service (IRS) since 1976. Before his employment with the IRS, petitioner was an electronics engineer with the Department of Defense. Petitioner also holds a certified public accountant's license from the State of South Carolina, is a 1982 graduate of the Indiana University Law School, and was licensed as an attorney by the State of Illinois in 1985.

Petitioner prepared the joint individual Federal income tax returns for himself and his wife for 1993 and 1994.

In April of 1998, a year after respondent issued the statutory notice of deficiency in this case, respondent replied

by letters to petitioners' March 1998 correspondence to the Problem Resolution Office. Respondent's reply advised of changes to petitioners' statements of account for both 1993 and 1994 and indicated for each year that "the amount you now owe" is "none".

The parties have stipulated that Exhibit 1-J "is a copy of petitioners' joint federal income tax return for the year 1993." Respondent has produced, and the Court has admitted into evidence, a certified copy of petitioners' joint individual Federal income tax return for 1994.

A. Medical Expenses

Mrs. Reynolds' mother, Mrs. Maxey, lived in a nursing home in Salem, Virginia, in 1993. She was 84 years old, suffering from Parkinson's disease, bedridden, and unable to feed or to care for herself. There were two other residents of the home where Mrs. Maxey resided. Mrs. Maxey was provided with around-the-clock care; the proprietor of the home was a registered nurse.

Mrs. Reynolds' sister, Judy Maxey, held power of attorney for their mother's bank accounts. Mrs. Reynolds had an agreement with her sister and their five brothers that they would share the expense of maintaining their mother in the Virginia nursing home. The family members agreed to make their monetary contributions for their mother's support to their sister, Judy Maxey. Judy Maxey would then make the required payments to the nursing home

or other payee.

With one exception, petitioners wrote a check to Judy or Mrs. Maxey for $600 monthly in 1993 until Mrs. Maxey's death in December of the year. It was Mrs. Reynolds' understanding that the money was to be used for "my mother's room and board at the nursing home", which was $2,400 per month. Petitioners also paid for health insurance to supplement medicare and medicaid for Mrs. Reynolds' mother as well as additional amounts for miscellaneous small items.

In connection with her employment with the Service America Corporation, most of Mrs. Reynolds' personal medical expenses were reimbursed by the Travelers managed care system (the Travelers). Mrs. Reynolds incurred $1,419.71 of dental, optical, and prescription expenses that were not covered by the Travelers in 1993. Petitioner received medical insurance under a plan subsidized by the Federal Government for which he paid $1,250 in 1994.

Petitioners claimed medical expenses of $13,664 for 1993. Respondent disallowed any deduction for medical expenses for the year. Petitioners did not claim any medical expense deduction for 1994.

B.    Legal Expenses

In or about 1988, petitioner obtained permission from the IRS to engage in the limited practice of law.  Petitioner's law practice was limited by standard employee rules of conduct promulgated by the IRS.

Petitioner's law practice generated receipts from real estate closings and related activities.  During 1993, petitioner performed approximately four real estate closings and reported gross receipts of $700.  Petitioner conducted two real estate closings in 1994 and reported gross receipts of $450.

Sometime in 1992, petitioner was "invited" to a meeting with the Inspection Division of the IRS (Inspection).  At the meeting, Inspection told petitioner that he was under investigation for practicing law during the official hours of his employment with the IRS.

Finding himself under investigation by his employer, petitioner obtained legal counsel.  Legal counsel represented petitioner throughout the investigation.  The investigation did not end until 1995.  Petitioner claimed attorney's fees on Schedule C of his joint individual Federal income tax returns of $2,380 in 1993 and $5,615 in 1994 in connection with the investigation.

In 1994 petitioners were considering suing Mrs. Reynolds' employer for sex discrimination.  Lori D. Ecker of Chicago was

retained to perform legal services on "litigation and technical matters" preliminary to filing a law suit. "The Law Offices of Lori D. Ecker" submitted an invoice dated September 21, 1994, for $175 to "Mrs. Reynolds" for "initial consultation". On December 27, 1994, petitioner wrote a check for $2,500 to "Trent & Butcher" that was paid by his bank on January 10, 1995. On Schedule C, petitioners deducted legal expenses related to Mrs. Reynolds' sex discrimination claim.

Respondent determined that, to the extent substantiated, petitioners' legal expenses are deductible as itemized deductions on Schedule A rather than business expenses on Schedule C.

C.   Various Schedule C Expenses

Respondent disallowed petitioners' claimed Schedule C expenses for 1993 and 1994. At trial, petitioners provided copies of miscellaneous checks, receipts, and invoices from 1993 as substantiation for Schedule C expenses for office expense, repairs and maintenance, and supplies. Respondent concedes that petitioners expended $140 for professional licenses for 1993. Petitioners offered no evidence to substantiate expenditures for business interest, commissions and fees, telephone expenses, and expenses for professional journals for either year.

D.    Car and Truck Expenses

Petitioners owned three automobiles in 1993 including a 1992 Lexus, a 1989 Chevrolet, and a 1988 Toyota Camry.  The Lexus was used exclusively, or nearly so, by Mrs. Reynolds.  The Chevrolet was used exclusively for personal transportation.  In October of 1994 petitioners traded the Chevrolet, along with cash, for a Ford van.  Petitioner testified that he used the Toyota Camry in his law practice and to travel to and from his farm and his various rental properties.

Petitioner did not maintain a log for his business automobile mileage.  During his testimony petitioner presented documents that were reconstructions of his business mileage.  The reconstructions were created as a result of the examination of his Federal income tax returns.

As a preliminary step in his reconstructions, petitioner determined the ratio of business mileage to nonbusiness mileage for computing depreciation deducted on Schedule C.  Included in total reconstructed business miles is employee business mileage for which he was compensated by the IRS.  Also included in total business mileage is mileage accumulated commuting to and from his home and the Cook County courthouse to do research and "back and forth to the title company" for real estate closings.

Respondent determined that petitioner has not substantiated his business use of the Toyota Camry.

E.    Travel and Meals and Entertainment Expenses

Petitioners owned rental properties in Indiana, Kentucky, and Virginia and farmland in Kentucky.  The farmland was inherited from petitioner's father in 1990.

There are no structures on the farmland except for fences. Many of petitioner's family members live near his Kentucky farmland.  His brothers own farmland on either side of his land. There was no crop grown on or harvested from the farmland in 1993.  His farm equipment was stored in his brother's barn.  In 1994, petitioner's brother raised the tobacco crop grown on the land, and petitioner and his brother split the expenses and proceeds from the sale of the crop.

On Schedules C and E, petitioners claimed travel and meals and entertainment expenses related to visiting their various properties.  Respondent denied petitioners' deductions on both schedules for lack of substantiation.  Petitioners now claim additional travel expenses related to Schedule E.

OPINION

Issue 1.  Estoppel

As a preliminary matter, petitioners argue that letters sent to them by respondent after the issuance of the notice of deficiency indicating that "the amount you now owe" is "none" are "binding admissions".  Such "binding admissions", petitioners believe, are determinative of their case and according to them

the government is "estopped from challenging its own correspondence, which claims No Deficiency for 1993 and 1994."

Petitioners cite no legal authority for their assertions, and we are unable to find any. Their primary position is contrary to well-established law. Congress has provided that closing agreements under section 7121 and compromise agreements under section 7122 are the exclusive means for the IRS to settle civil tax disputes with finality. See Botany Worsted Mills v. United States, 278 U.S. 282, 288 (1929); Estate of Meyer v. Commissioner, 58 T.C. 69, 70 (1972); see also Sampson v. Commissioner, 444 F.2d 530, 531 (6th Cir. 1971), affg. T.C. Memo. 1970-212. The record is devoid of any evidence that petitioners and respondent entered into a valid closing agreement or compromise agreement.

Petitioners further argue that respondent is estopped from challenging the letters, which they inaccurately characterize as stating that they owe "no deficiency" for 1993 and 1994. What the letters actually purport to address is petitioners' "account" for each of the years at issue. The numbers by which petitioners' "account" was adjusted bear no relationship to those contained in the statutory notice of deficiency. We would not expect the account to reflect the amounts that are the subject of this litigation because the proposed deficiencies and penalties may not properly be assessed until our decision in this case has

- 11 -

become final.  See secs. 6211(a), 6212(a), and 6213(a).  In a tax
case, the doctrine of estoppel is not applicable unless the party
relying on it establishes all of the following elements at a
minimum:

> (1) There must be a false representation or
> wrongful misleading silence; (2) the error
> must be in a statement of fact and not in an
> opinion or a statement of law; (3) the person
> claiming the benefits of estoppel must be
> ignorant of the true facts; and (4) he must
> be adversely affected by the acts or
> statements of the person against whom an
> estoppel is claimed.  * * *

Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977);
see also Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir.
1971).  Petitioners have not established the required elements to
claim estoppel successfully.  Among other things, they have not
presented any evidence that they were adversely affected by their
reliance on the letters.  Cf. Schwager v. Commissioner, 64 T.C.
781, 789 (1975).  Accordingly, the doctrine of estoppel does not
apply in the instant case.

Issue 2.  Evidence of Petitioners' Tax Returns

Petitioners also argue that this case should be dismissed
because respondent did not produce the original tax returns they
filed for 1993 and 1994, "or copies or reasonable versions" of
them.  Petitioners cite no authority for this position and it is
without merit.  See Fed. R. Evid. 1004 and 1005; Estate of Clarke
v. Commissioner, 54 T.C. 1149, 1163 (1970).  Furthermore, the

parties have stipulated an exhibit that they have represented to be a copy of petitioners' joint Federal income tax return for the year 1993.[3]  As part of the stipulation the parties agree that "all exhibits referred to herein and attached hereto may be accepted as authentic".  In addition, the Court has admitted into evidence, upon motion after trial, a certified copy of petitioners' joint Federal income tax return for 1994.

Issue 3.  Medical Expenses

Under section 213, individuals are allowed to deduct the expenses paid for the "medical care" of the taxpayer, the taxpayer's spouse, or a dependent, to the extent the expenses exceed 7.5 percent of adjusted gross income and are not compensated for by insurance or otherwise.

The term "medical care" includes amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for insurance covering the diagnosis, cure, mitigation, treatment, or prevention of disease.

Petitioners claimed medical and dental expenses totaling $13,644 for 1993.  They did not deduct any medical expenses for 1994.  Respondent denied the deductions, determining that Mrs. Maxey was not petitioners' dependent and that medical expenses had

---

[3]     Under our Rules "A stipulation shall be treated * * * as a conclusive admission by the parties to the stipulation".  Rule 91(e); see, e.g., Noneman v. Commissioner, T.C. Memo. 1978-283.

not been substantiated.  Respondent has conceded the dependency issue.

     A.   Mrs. Maxey's Medical Expenses

     Mrs. Reynolds testified that her mother's nursing home was State certified and that the proprietor was a registered nurse. She further testified that she had an agreement with her family that she would pay to her sister $600 per month to help with her mother's nursing home expenses.  She also testified that she paid twice a year for her mother's Blue Cross/Blue Shield supplemental health insurance premiums and, in addition, for miscellaneous items, such as "Depends" and bed pads.  According to Mrs. Reynolds, her sister held power of attorney for their mother's bank accounts.

     As substantiation of the amounts paid for Mrs. Reynolds' mother's care, petitioners introduced copies of the front sides of 19 checks drawn on three different checking accounts, bearing dates in 1993.  The copies indicate that the checks were drawn in favor of either Mrs. Reynolds' sister or her mother.

     Included in the copies are images of the front sides of 11 checks for $600, including 2 for the month of May and 1 for each of the other months, except October and December.  On the March check the magnetic numbers at the bottom right do not match the

amount for which the check was written.[4]  There is a copy of the front side of a check dated October of 1993 for $1,000 bearing a notation that $600 is for "support" and $400 is for "Home Health Care".  There is no evidence of a payment in December of 1993, the month Mrs. Reynolds' mother died.

There are copies of two checks drawn to Mrs. Reynolds' sister, Judy Maxey, with notations that the check is for Blue Cross health insurance, one for $855 in March and for $805 in August.  There are two checks, one drawn to Mrs. Maxey, the other to Judy Maxey, that bear notations that they are for the "Home Health Care" of Mrs. Maxey for $300 and $200, respectively.

There are three checks drawn to Mrs. Reynolds' sister in the respective amounts of $1,000, $400, and $500 that bear no notation, or no notation that they are for the health care of Mrs. Maxey.

Petitioners also produced copies of both sides of a check dated April 7, 1994, drawn on Mrs. Reynolds' account to the order of Judy Maxey for $750.  The front side bears the notation "Remaining Medical Bills for Mrs. Maxey".  At trial, petitioners argued that the expense represented by this check may be deducted

---

[4]    Petitioners submitted a reconstruction of medical expenses indicating, among other items, a "Check-Paid but reimbursed" in the amount of $600.

on their 1993 tax return because "there's an exception in the Code * * * for this type of a situation."

We are unaware of the exception to which petitioners refer. As a general rule, cash method taxpayers deduct expenses in the year actual payment takes place. See sec. 1.461-1(a)(1), Income Tax Regs. Petitioners have failed to point out any "exception in the Code" that would exclude them from the general rule. To the extent they may be relying on section 213(c)(1), they are in error. That provision allows an income tax deduction to <u>a deceased taxpayer</u> for medical expenses paid out of <u>his estate</u> within a year of his death as though they were paid at the time incurred. Even if the $750 of expenses had been paid out of the Estate of Mrs. Maxey, petitioners would not be entitled to claim them as deductions on their joint income tax return.

We find that petitioners paid in 1993 deductible expenses for medical care for Mrs. Maxey totaling $9,160. The total consists of 10 monthly payments of $600, an October payment of $1,000, insurance payments of $855 and $805, and general "Home Health Care" payments of $300, and $200 for miscellaneous items.

B. <u>Petitioners' Personal Medical Expenses</u>

Petitioners assert that they are entitled to deduct, as medical expenses, payments of medical insurance premiums for 1993 made under their respective health plans, as well as the payments of medical expenses not covered by their health plans.

Petitioners' explanation of their entitlement to deductions for medical insurance premiums they claimed to have paid for 1993 is both unsubstantiated and abstruse.

During his testimony, petitioner produced copies of IRS statements of earnings for 1994 that substantiate payroll deductions for health plan payments of $1,252 during that year. Petitioner offered no evidence showing payroll deductions for health insurance payments for 1993. Petitioner testified, however, that to the best of his knowledge, his treatment of his health insurance premiums on his tax return for 1993 was "consistent" with his 1994 return.

His treatment of the 2 years' returns was "consistent", according to petitioner, in that he included only a fraction of his insurance payments in his medical expense deduction on Schedule A for both years' returns. He testified that he did not fully deduct the expense as an itemized deduction on his tax returns because:

> I'm a self-employed person, and a self-employed person
> is allowed to -- was allowed to deduct a portion of
> their medical insurance premiums. Okay. At that point
> as we were going through this, I realized, well, I'm
> also a full-time employee of the Service and obviously
> paid these expenses, so if an employee's entitled to the
> deduction, then I'm entitled to the full thing, and
> therefore, I changed my posture on that.

We find petitioner's position difficult to understand from both a factual and a legal standpoint. Since petitioner did not

claim any amount on Schedule A of his Federal income tax return for 1994 as a medical expense,[5] we fail to see how this is "consistent" with his claim of medical expenses for 1993.

The term "medical care" as used in section 213, allowing the deduction, includes amounts paid for insurance covering medical care. Petitioners were entitled to claim as a deduction on Schedule A the full amount of medical insurance payments made during the tax year subject to the 7.5-percent limitation. If petitioners are arguing that a portion of Mr. Reynolds' payments for his Government-sponsored medical plan is deductible on Schedule C, because of his self-employment, we decline to accept their argument.

Self-employed individuals may deduct as a business expense the "applicable percentage" of amounts paid for medical insurance. Sec. 162(l)(1)(A). But no deduction is allowed in excess of the taxpayer's earned income from self-employment derived from the trade or business with respect to which the plan providing the medical coverage is established. See sec. 162(l)(2)(A); King v. Commissioner, T.C. Memo. 1996-231. Petitioner's Government-sponsored health plan was not established with respect to his Schedule C business. Furthermore, allowance of the deduction does

_____

[5]    Petitioners reported adjusted gross income of $104,213 for 1994. In order to obtain the benefit of deducting medical expenses for the year, total medical expenses would have to exceed $7,816 (7.5% x $104,213).

not apply to any taxpayer for any month for which the taxpayer is eligible to participate in a subsidized health plan maintained by his employer. See sec. 162(l)(2)(B). Petitioner was eligible to participate in such a plan throughout 1993 and 1994. See 5 U.S.C. secs. 8905 and 8906(b)(1) and (2) (1994). Petitioners may not deduct on Schedule C any amount paid for employer-sponsored medical insurance. On the basis of the record, petitioners are not entitled to claim on Schedule C any medical expense deduction for 1993 or 1994.

Petitioner testified that the amount deducted on Schedule A as medical expenses for 1993 included $1,216 for his wife's health insurance payments. Petitioners produced copies of "Explanation of Benefits" (EOB's) that are evidence that Mrs. Reynolds was covered during 1993 by a health insurance plan sponsored by her employer. The EOB's are not, however, evidence of the amount, if any, that Mrs. Reynolds paid for her health plan coverage. Mrs. Reynolds, who testified on other matters, gave no testimony on the subject of health insurance payments. Petitioners have failed to substantiate that they made any expenditure in 1993 for medical insurance.

Copies of the EOB's in evidence, along with other receipts supplied by petitioners, show that Mrs. Reynolds incurred $1,419.71 of dental, optical, and prescription expenses that were not covered by her employer sponsored health plan in 1993.

We hold that petitioners have substantiated medical expenses in 1993, deductible on Schedule A, of $9,160 paid for their dependent, Mrs. Maxey, and $1,419.71 of their personal medical expenses that were not covered by medical insurance. In 1994, petitioners had medical expenses of $1,252 for health insurance. Petitioners' medical expense deductions are allowable to the extent they exceed 7.5 percent of their adjusted gross income for each year. See sec. 213(a).

Issue 4. Legal Expenses

Petitioner claimed on his Schedules C for 1993 and 1994 expenses for legal and professional services of $2,380 and $8,290, respectively. All of the expenses for 1993 and $5,615 of the expenses claimed for 1994 relate to legal counsel petitioner engaged to represent him while he was being investigated by Inspection.

A. Origin and Character of the Claim

The investigation concerned allegations that petitioner was engaged in the private practice of law during government working hours. According to petitioners, the claimed legal expenses are correctly claimed on Schedule C because the expenses are directly related to petitioner's practice of law. The expenses are directly related to the law practice, petitioners argue on brief, because "Such conduct, if proved, could result in sanctions against the law license of Petitioner Charles Reynolds in

Illinois." Petitioner explained during his testimony that Inspection was "investigating" his Schedule C gross receipts related "directly to my practice of law" and to his alleged practice on government time.

Respondent contends that petitioner's motivation in making payments for legal representation is irrelevant; it is the origin of the claim that is important. The origin of the claim, in respondent's view, is in connection with "defending" petitioner's employment with the IRS. Respondent points out that such expenses are deductible on Schedule A as employee business expenses subject to the 2-percent "floor" of section 67(a). We agree with respondent.

The Supreme Court, in United States v. Gilmore, 372 U.S. 39 (1963), held that the characterization of legal expenses depends on the activities from which the claim arises for which the expenses were incurred. The Court said that "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test". Id. at 49.

The "origin-of-the-claim" rule is not "a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts." Boagni v. Commissioner, 59 T.C. 708, 713 (1973). The question to be

answered is: out of what kind of transaction did the claim arise?
See id.

When determining the origin of the claim, the Court must
consider the issues, the nature and objectives of the potential
action, the defenses asserted, the purpose for the legal fees, the
background of the claim out of which the dispute arose, and "all
facts pertaining to the controversy." Id. (citing Morgan's Estate
v. Commissioner, 332 F.2d 144, 151 (5th Cir. 1964)); see Barr v.
Commissioner, T.C. Memo. 1989-420.

According to 6 Administration, Internal Revenue Manual (CCH)
sec. 331.1, at 38,063, Inspection's purpose in conducting
investigations of allegations against employees of the Internal
Revenue Service is to determine facts and to report them to
management for a decision as to "whether the employee is suitable
for retention in the Service" and for other necessary action.
Inspection does not examine tax returns. See id. sec. 331.22.

Petitioners argue that "As a consequence of the
investigation, Charles Reynolds may have lost his law license" or
might have suffered a negative impact on his law practice or
professional reputation. The relevant question, however, asks
what the expense arose in connection with, not what consequences
might have resulted from the taxpayer's failure to defeat the
claim. See United States v. Gilmore, supra at 48; Patch v.
Commissioner, T.C. Memo. 1980-11. The purpose of the legal fees

incurred by petitioner in this case was for petitioner to obtain representation during the investigation by Inspection.  The origin of the claim here had to do with petitioner's conduct as an employee of the Internal Revenue Service, not with his trade or business as an attorney.  Petitioner was attempting to protect his employment, not his part-time activity as an attorney.  Petitioner's legal expenses incurred for representation in connection with the Inspection inquiry are therefore deductible as employee business expenses on Schedule A.

B.    Time of Payment

Of the legal expenses claimed for 1994 that relate to the Inspection inquiry, the parties disagree over the deductibility of a payment of $872.  Respondent takes the position that the amount was not paid until 1995, while petitioners argue that it was paid in December of 1994.

Petitioners introduced into evidence a computer printout of the attorney's ledger card indicating that $820 in fees and $52 in costs were billed to petitioner on December 21, 1994.  But the ledger card also indicates that the payment of $872 by check No. 3084 was not posted to petitioner's account until February 20, 1995.  Petitioner testified that he remembered writing the check for $872 in December of 1994, "so that I got the tax deduction" in that year.  Petitioners offered, however, no canceled check, bank statement, or other documentary evidence of the date of the

contested payment although they produced a bank statement for the same general time period reflecting other payments at issue.[6]

Once again we cite the general rule that cash method taxpayers may deduct expenses in the year actual payment takes place. See sec. 1.461-1(a)(1), Income Tax Regs. Generally, delivery of a check will constitute payment. See Estate of Spiegel v. Commissioner, 12 T.C. 524, 533 (1949). If a check is dated in one year but cashed in the next year, the deduction will not be allowed absent proof of delivery in the year of the deduction. See Odom v. Commissioner, T.C. Memo. 1982-531, affd. 707 F.2d 508 (4th Cir. 1983); McCoy v. Commissioner, T.C. Memo. 1971-34. Petitioners have not offered any evidence that check No. 3084 for $872 was delivered to the payee in 1994 and the amount is therefore not deductible for that year.

On Schedule C for 1994 petitioners also seek to deduct legal expenses incurred for Mrs. Reynolds' representation in a sex discrimination action. They produced a copy of a September 1994

---

[6] Petitioners had more than one checking account. Checks written on account No. 302386-8 bore three-digit numbers in the two hundreds at the end of 1993. Petitioners introduced as evidence for other items, checks written on account Nos. 039-0950 and 016020109603. Checks written on the latter accounts in 1993 bore four digits in the high two thousands and low three thousands and three-digit numbers, respectively. Check No. 3084 is either out of order by months or was written on a fourth account. Petitioners offered no explanation for their inability to produce canceled check No. 3084, a copy of it, or a statement showing it.

invoice for legal services submitted to Mrs. Reynolds requesting payment of $175 and a copy of a bank statement on account No. 302386-8 that shows that check No. 242 for $2,500 was presented to the bank for payment on January 10, 1995. A copy of petitioners' check register indicates that check No. 242 was written on December 27, 1994. Petitioners did not produce the original or a copy of check No. 242.

The evidence does not show that the invoice for $175 was paid in 1994 or that check No. 242 for $2,500 was delivered in 1994. The amounts are therefore not deductible for that year.[7] See Odom v. Commissioner, supra; McCoy v. Commissioner, supra.

Issue 5. Various Schedule C Expenses

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Generally, no deduction is allowed for personal, living, or family expenses. See sec. 262. The taxpayer must show that any claimed business expenses were incurred primarily for business rather than social reasons. See Rule 142(a). To show that an expense was not personal, the taxpayer must show that the expense was incurred primarily to benefit his business, and there must have been a proximate

---

[7] Because petitioners have not shown that the payments were made in 1994, we need not address respondent's arguments that Mrs. Reynolds' legal expenses are not otherwise deductible, or if deductible, must be claimed on Schedule A.

relationship between the claimed expense and the business.  See Walliser v. Commissioner, 72 T.C. 433, 437 (1979).

Where a taxpayer has established that he has incurred a trade or business expense, failure to prove the exact amount of the otherwise deductible item may not always be fatal.  Generally, unless prevented by section 274, we may estimate the amount of such an expense and allow the deduction to that extent.  See Finley v. Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), affg. 27 T.C. 413 (1956); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  In order for the Court to estimate the amount of an expense, however, we must have some basis upon which an estimate may be made.  See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Without such a basis, an allowance would amount to unguided largesse.  See Williams v. Commissioner, 245 F.2d 559, 560 (5th Cir. 1957).

Petitioner provided at trial copies of miscellaneous checks, receipts, and invoices as substantiation for Schedule C expenses for office expense, repairs and maintenance, and supplies for 1993.  Respondent concedes that petitioner has shown his expenditure in 1993 of $140 for professional licenses.  In his testimony, petitioner pointed out copies of checks and receipts substantiating the expenditure of $1,106 for repair and maintenance of a business computer in 1993.

Petitioners offered no coherent substantiation for office and supplies expenses for 1993.  Petitioners offered no evidence to substantiate expenditures for business interest, commissions and fees, telephone expenses, and expenses for professional journals in 1993 and no substantiation for various Schedule C deductions for 1994.

Petitioners are entitled to deduct various Schedule C expenses of $1,246 for 1993 but may deduct no amount for 1994.

Issue 6.  Section 274 Expenses

Certain business deductions described in section 274 are subject to rules of substantiation that supersede the doctrine in Cohan v. Commissioner, supra.  See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Section 274(d) provides that no deduction shall be allowed with respect to:  (a) Any traveling expense, including meals and lodging away from home; (b) any item related to an activity of a type considered to be entertainment, amusement, or recreation; or (c) the use of any "listed property", as defined in section 280F(d)(4),[8] unless the taxpayer substantiates certain elements.

For an expense described in one of the above categories, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) The

---

[8]    "Listed property" includes any passenger automobile.  Sec. 280F(d)(4)(A)(i).

amount of the expenditure or use based on the appropriate measure (mileage may be used in the case of automobiles); (2) the time and place of the expenditure or use; (3) the business purpose of the expenditure or use; and in the case of entertainment, (4) the business relationship to the taxpayer of each expenditure or use. See sec. 274(d).

To meet the adequate records requirements of section 274, a taxpayer must maintain some form of records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., supra. A contemporaneous log is not required, but corroborative evidence to support a taxpayer's reconstruction of the elements of expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

A.   Automobile Expenses

Petitioners owned three automobiles in 1993, including a 1988 Toyota Camry. Petitioners claimed as deductions in 1993 and 1994 miscellaneous and depreciation expenses for use of the Toyota in petitioner's law practice and to travel to and from his farm and the various rental properties. Petitioners claimed all of the

depreciation on Schedule C and miscellaneous automobile expenses on Schedules C and E.

Respondent disallowed petitioners' deductions for automobile expenses on Schedules C and E for 1993 and on Schedule C for 1994. Respondent's position is that petitioners have failed to substantiate their deductions as required by section 274(d).

Petitioner did not maintain a log for his business automobile mileage. He testified that he thought that maintaining a log was unnecessary on the basis of his reading of the Master Tax Guide, an unofficial publication of CCH Corporation; all he had to do was "be able to substantiate the elements of the expense."

At trial, petitioner attempted to substantiate his expenses by presenting reconstructions of his business mileage. He provided the Court with three documents for 1993 and one for 1994. One of the 1993 documents is titled "Reconstruction of Miles Driven". It has seven columns, one each for month, activity, destination, "R/T MILE", tolls, gas, "OILMAINT/REP", and hotel. Under the activity column for each month are listed four items, "LAW", "R/E MGMT", "FARM", and "OFFICIAL". Although petitioner testified that he was unable to allocate mileage between his various business activities, his "Reconstruction of Miles Driven" purports to list the monthly mileage and expenses for each category of activity and to determine the totals for each category of activity for 1993.

Petitioner also provided documents reconstructing automobile expenses for 1993 and for 1994 that are called "Schedule C Car Expenses". They show beginning, ending, and total mileage driven and total personal and business miles driven. The reconstructions state that the car was "Used for" petitioner's legal practice, real estate rental, and farm management travel. Petitioner computed depreciation in the documents and listed expenses for "Gas/Oil", insurance, "Title", "Repair-Tire", and "Tolls/Parking".

The third document for 1993 is "Schedule E: Automobile Expenses". It purports to allocate miscellaneous automobile expenses to the "Rental Real Estate Management/Maintenance" of three properties, one each located in Kentucky, Virginia, and Illinois.

### 1. Law Practice Use

Petitioner takes the position that he is entitled to Schedule C deductions for use of the Toyota automobile in his legal practice. He used his car in his legal practice, petitioner testified, "commuting to and from" his home "for the practice of law". He said he had several real estate closings and commuted to and from the title company.

Generally, expenses that a taxpayer incurs in commuting between his home and place of business are personal and nondeductible. See Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); Heuer v. Commissioner, 32 T.C. 947, 951 (1959), affd. per

curiam 283 F.2d 865 (5th Cir. 1960); secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs. Expenses incurred, however, in going between two or more places of business may be deductible as ordinary and necessary business expenses under section 162 if incurred for business reasons. See Steinhort v. Commissioner, 335 F.2d 496, 503-504 (5th Cir. 1964), affg. T.C. Memo. 1962-233; Heuer v. Commissioner, supra at 953.

Where a taxpayer attempts to deduct the expenses of traveling between two places of business, one of which is an office in his home, that office must be the taxpayer's principal place of business for the trade or business conducted by the taxpayer at those other work locations. See Strohmaier v. Commissioner, 113 T.C. 106 (1999); Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980). On his Schedules C for 1993 and 1994, line 30, "Expenses for business use of your home", petitioner listed zero. Petitioner offered no evidence and made no argument that his "principal place of business" was at his home. Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993).

### 2. Farm Use

At the very bottom of the second page of his "Reconstruction of Miles Driven" for 1993, there is a notation that petitioner drove a total of 3,715 miles to and from "Farm" on April 22, June 13, July 28, and October 11, 1993, for "CROPS". In view of other

evidence in the record, we are not sure what to make of this rather terse explanation.

Petitioners' 1993 Schedule F, Profit or Loss From Farming, reports no income from crops for 1993 but states on line 34: "NOTE: CROP SOLD 1/94-NOT Included In Income-CASH Basis TP".  At trial, petitioner's testimony about his farm activities was vague, confusing, and evasive.  Petitioner did testify, eventually, that "I did not raise a crop * * * in '93 on that land."

### 3.   Property Management Use

The Schedule E reconstruction includes as "real estate property management" expenses of petitioner's Kentucky property travel expenses (including airfare) for a trip to Florida in 1993 for both petitioners.  The stated purpose of the trip was for them to bid for vacant property suitable for residential real estate development.  Petitioners submitted copies of credit card receipts and airline ticket receipts as substantiation for their expenses. Although the trip took place between February 7 and 12, 1993, the copy of the airline ticket receipt that petitioner entered into evidence shows that it was not issued until December 27, 1993. Mrs. Reynolds' ticket was issued for travel on January 30 and 31, 1993.[9]

---

[9]    Petitioner's residential real estate development activity generated, at best, startup or preopening expenses.  See sec. 195(c)(1).  Startup or preopening expenses are not deductible

(continued...)

Petitioner testified that he reconstructed his business records from memory aided by review of his retained receipts. Petitioner provided the Court with copies of what he characterizes as receipts "representative" of those upon which he relied for his 1993 and 1994 reconstructions. We are, however, unable to determine from the copies of receipts the purpose of any of his automobile trips. The most detailed description that the reconstructions give to explain his trips for "real estate management" is "cleaning, leasing", with reference to 3,646 miles driven in 1993.

The most detailed of the three reconstructions for 1993 states mileage by month rather than by trip. The reconstruction for 1994 gives only Schedule C totals for the year. Many of the "representative" receipts are for automobile repairs having no apparent relationship to any particular trip or business purpose. Some of the gasoline receipt copies show that purchases were made in States in which petitioners maintained property, adjacent States, or States through which one might travel to reach such States. But petitioners have failed to show that personal reasons

9(...continued)
under either sec. 162 or sec. 212. See Hardy v. Commissioner, 93 T.C. 684, 687-689 (1989); Goodwin v. Commissioner, 75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982); Dean v. Commissioner, 56 T.C. 895, 902 (1971); Polachek v. Commissioner, 22 T.C. 858, 863 (1954). Even if substantiated, deduction of such expenses is specifically denied by sec. 195(a).

were not the primary reasons for the trips.  See Masat v. Commissioner, 784 F.2d 573 (5th Cir. 1986), affg. on this issue T.C. Memo. 1984-313.

The mere fact that petitioners own business or investment property in a certain location does not mean that any expense incurred in traveling to that location is automatically deductible.  See Lawler v. Commissioner, T.C. Memo. 1995-26.

### 4.  Employee Use

Petitioner's computations of business use of the Toyota automobile in order to allocate depreciation among his activities include mileage from using his car in his capacity as an employee of the IRS, for which he was reimbursed.  Petitioner's reconstruction for 1993 shows 2,264 "official" miles driven, but he provided substantiation for only 105 miles driven.  He offered no evidence of his "official" miles driven, if any, in 1994.

Under section 280F(d)(3), employee use of listed property shall not be treated as use in a trade or business for determining the amount of depreciation allowable to the employee unless the use is for the convenience of the employer and is required as a condition of employment.  See also sec. 1.280F-6T(a), Temporary Income Tax Regs., 49 Fed. Reg. 42703 (Oct. 24, 1984).  No evidence was offered on this point, and we therefore cannot find that petitioner was required to use his car as a condition of his

employment.  See <u>Bryant v. Commissioner</u>, T.C. Memo. 1993-597, affd. 39 F.3d 1168 (3d Cir. 1994).

Petitioners have not substantiated the business nexus for any of the claimed automobile expenses for driving to or from petitioner's law practice, farm, or rental property, or that he incurred auto expenses as a condition of his employment with the IRS.  See <u>Dowell v. United States</u>, 522 F.2d 708, 714 (5th Cir. 1975) (each and every element of each and every expenditure must be substantiated).  We find, therefore, that petitioner's testimony and the monthly and yearly mileage reconstructions do not meet the requirements of section 274(d).

B.    <u>Travel and Meals and Entertainment Expenses</u>

1.    <u>Law Practice</u>

Petitioners claimed meals and entertainment expenses on Schedule C for 1993 of $559, and travel and meals and entertainment expenses of $151 for 1994.  Petitioners provided no acceptable substantiation for entertainment expenses for either year.

Of the $559 claimed for meals and entertainment expenses for 1993, $367.34 was expended for a "family get-together" in 1993 on the occasion of the death of Mrs. Reynolds' mother in Virginia. Petitioner testified that "I went as an individual who was there as a mourner", but a legal matter arose as to how to handle the estate, which petitioner described as "indigent".  Petitioner

testified that at the family dinner he was acting as an attorney, not as a family member.

For purposes of section 274, "entertainment" includes an activity that satisfies personal, living or family needs, such as providing food and beverages. See sec. 1.274-2(b)(1)(i), Income Tax Regs. Generally, no deduction for entertainment expenses is allowable unless the taxpayer establishes that the expenditure was directly related to the active conduct of the taxpayer's trade or business, or in the case of an expenditure directly preceding or following a substantial and bona fide business discussion, that the expenditure was associated with the active conduct of the taxpayer's trade or business. See sec. 274(a)(1)(A); sec. 1.274-2(a)(1), Income Tax Regs. The requirements for deductibility are in addition to the substantiation requirements of section 274(d).

Petitioner has not shown that he is authorized to practice law in the Commonwealth of Virginia. Nor has petitioner shown how his payment for a family meal in Virginia is directly related to or associated with the conduct of his law practice in Illinois, which consisted primarily of real estate closings, not matters related to decedents' estates.

On the basis of the record, we find that petitioner's "family meal" expenditure was primarily a personal rather than a business expense, and that petitioner has not met the section 274 substantiation requirements for the balance of his meals and

entertainment expense deductions for 1993 or for any such expense for 1994.

### 2.   Real Estate Management

In their amended petition and at trial, petitioners argue that they are entitled to additional deductions for the "standard per diem allowance for meals when traveling" with respect to their Schedule E activity in both 1993 and 1994.

Petitioner testified that based on his review of his receipts, he is entitled to claim a per diem allowance for 38 days in 1993 and 38 days in 1994.  Petitioner did not share with the Court any business purpose, specific location or dates making up the 38 days in each year for which he seeks deductions, nor did he advise the Court of the legal authority on which he based his position.

The Commissioner's Rev. Proc. 90-15, 1990-1 C.B. 476, provides that in lieu of actual expenses, self-employed individuals may, in computing a deduction for ordinary and necessary meals and incidental expenses (M&IE) paid or incurred for travel away from home, use the Federal M&IE rate for the locality of travel for the period away from home.  The per diem rate will be deemed substantiation of the amount for purposes of section 1.274-5T(b)(2) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985), provided that the "self-employed individual substantiates the elements of time, place, and business

purpose of the travel expenses in accordance with those regulations."  Rev. Proc. 90-15, 1990-1 C.B. at 476.

Petitioners have provided no substantiation for the time, place, and business purpose for any of the claimed per diem expenses.  We hold, therefore, that petitioners are not entitled to any deduction for per diem away-from-home expenses for 1993 or 1994.

Issue 7.  Section 179 Deduction

Petitioners owned a 1989 Chevrolet that was used exclusively for personal transportation.  In October of 1994, petitioners traded the Chevrolet, along with cash, for a Ford van.  Petitioner explained in his testimony that he purchased the Ford van to use as sleeping quarters when he visited his Kentucky farm "rather than pay $75-$100 a night for a motel".  He also used it to "haul a tiller, plows, farm implements, this sort of thing" to the farm in 1994.  Petitioner testified that he drove the van a total of 2,234 miles of which 1,866 miles were accumulated from the trip to Virginia to pick up the "farm stuff" take it to Kentucky, and return to Illinois.

In their amended petition, petitioners claimed that respondent had improperly failed to consider their claim for $12,000 in farm equipment expenses "not properly claimed on petitioners' returns as filed."

During the trial (before respondent had located petitioners'

Federal income tax return for 1994), petitioner testified on direct examination that he "attempted" to take a section 179 deduction for the van on his tax return for 1994. Petitioner testified that he took the deduction on Form 4562. He also explained that he had trouble getting "Turbotax to show the same vehicle twice, once for the 179 expense and once for the depreciation deduction. I'm not sure that it came through."

Using a figure of 83 percent for farm use and a purchase price of over $20,000, petitioner testified that there should be allowed for 1994 a section 179 deduction for the van of about $14,266 for Schedule F use. Instead of reported Schedule F income of $1,074, petitioner testified that the farm activity should show a substantial loss.

Section 179(a) allows a taxpayer to treat the cost of certain tangible property as an expense for the taxable year it is placed in service. Petitioner, however, as with some of the other issues in his case, has failed to take into consideration all of the statutory requirements to be entitled to the deduction he now claims under section 179.

The section 179 deduction is available only for section 179 property. See sec. 179(a). Section 179 property is property purchased for use in "the active conduct of a trade or business". Sec. 179(d)(1). As used in section 179 the term "trade or business" has the same meaning as in section 162 and the

regulations thereunder, and therefore property held merely for the production of income does not qualify as section 179 property. Sec. 1.179-2(c)(6)(i), Income Tax Regs.

"Active conduct" as used in section 179 means that the taxpayer actively participates in the management or operations of the trade or business. Sec. 1.179-2(c)(6)(ii), Income Tax Regs. A passive investor does not actively conduct a trade or business. See id.

According to petitioner's testimony, his farm has no structures other than fences and there were no crops raised on the farm in 1993. Petitioner further explained that "Because the acreage is small--it's 22 and some few tenths acres--it is not sufficiently large, and we don't have an allocated poundage allotment authorized by the government to produce a lot of tobacco on it to pay expenses."

We shall, nevertheless, assume for the sake of argument that in 1994 the farm activity was conducted at the level of a "trade or business" as that term is used in section 162. To be entitled to the deduction, petitioner must show in addition that he "meaningfully participated" in the management or operations of the trade or business. See sec. 1.179-2(c)(6)(ii), Income Tax Regs. Petitioner testified that he took farm equipment from Virginia to the farm in 1994 and "cleaned fence rows", but he also testified:

> --the--my brother raised the crop.  Okay?  He
> --having the adjacent acreage there, he raised
> the crop and we effectively sharecropped that.
> Okay?  In other words, he's raising the
> tobacco and we're going to split the proceeds.
> I'm going to bear half the expense and that's
> what you see on the expense schedule, sir.

From petitioner's testimony it would appear that he did not meaningfully participate in the operations of the farming activity, and he offered no evidence bearing on his participation in the management of the farming activity in 1994.[10]

If we nevertheless assume, arguendo, that petitioners' van is section 179 property and that petitioner actively conducted the farming activity as a trade or business in 1994, petitioners are still not entitled to the deduction.  They are still not entitled to the deduction because, in their own words, it was "not properly claimed on petitioners' returns as filed."

The election under section 179 "shall be made on the taxpayer's first income tax return for the taxable year to which the election applies" or on an amended return filed within the time prescribed (including extensions) for filing the return for the taxable year.  Sec. 1.179-5(a), Income Tax Regs.; see sec. 179(c)(1)(B).  In addition, the election must list the total section 179 expenses claimed for all section 179 property selected

---

[10]    Petitioner testified that his farm management activity for 1993 consisted of leasing a portion of the allotted tobacco poundage to another farmer.

and must state that portion of the deduction allocable to each item. See sec. 179(c)(1)(A); sec. 1.179-5(a)(1) and (2), Income Tax Regs.

Attached to petitioners' return for 1994 are three Forms 4562, Depreciation and Amortization: two for "Law practice" and one for "Real Estate Mgmt". There is no Form 4562 for petitioners' farm activity. On the Form 4562 for "Real Estate Mgmt", petitioners list as 5-year property under part V, section A, listed property depreciation, a 1994 Ford truck acquired in October of 1994, with a cost basis of $20,507. For its use in "Real Estate Mgmt" activity, $17,226 of the total cost basis of the van is allocated to depreciation; petitioners claimed a depreciation deduction of $2,960. Petitioners therefore allocated 84 percent ($17,226/$20,507) of the cost basis of the Ford van to depreciation for its use in real estate management activities. The $2,690 of depreciation for the van is part of a total of $8,665 of depreciation claimed on line 20 of petitioners' Schedule E.

On petitioners' 1994 Federal income tax return, there is no section 179 election for the 1994 Ford van for use in farming or in any other activity. Petitioners explicitly depreciated the van for its use in a different activity. Petitioners are not entitled to claim any amount under section 179 with respect to the purchase in 1994 of the Ford van. See Sharon v. Commissioner, 66 T.C. 515,

533 (1976), affd. 591 F.2d 1273 (9th Cir. 1978); Mitchell v.
Commissioner, 42 T.C. 953, 968 (1964); Starr v. Commissioner, T.C.
Memo. 1995-190, affd. without published opinion 99 F.3d 1146 (9th
Cir. 1996).

Issue 8.  Accuracy-Related Penalty

Respondent determined that for both 1993 and 1994,
petitioners underpaid a portion of their income taxes because of
negligence or intentional disregard of rules or regulations.
Section 6662 imposes a penalty equal to 20 percent of the portion
of the underpayment attributable to negligence or disregard of
rules or regulations.  Sec. 6662(a) and (b)(1).

Negligence is defined as any failure to make a reasonable
attempt to comply with the provisions of the Internal Revenue
Code, and the term "disregard" includes any careless, reckless, or
intentional disregard.  Sec. 6662(c).

The accuracy-related penalty will apply unless petitioners
demonstrate that there was reasonable cause for the underpayment
and that they acted in good faith with respect to the
underpayment.  See sec. 6664(c).  Section 1.6664-4(b)(1), Income
Tax Regs., specifically provides:  "Circumstances that may
indicate reasonable cause and good faith include an honest
misunderstanding of fact or law that is reasonable in light of the
experience, knowledge and education of the taxpayer."

One of petitioners is a supervisory revenue agent with the

IRS, an attorney, and a certified public accountant.  With his background, he has a wider range of technical expertise in tax matters than do members of the general public.  See <u>Lagoy v. Commissioner</u>, T.C. Memo. 1992-213; <u>Jenkins v. Commissioner</u>, T.C. Memo. 1988-292, affd. without published opinion 880 F.2d 414 (6th Cir. 1989).  He is, or certainly should be, familiar with the substantiation requirements of section 274, and he had access to a wide range of tax resources relating to his claimed deductions under sections 162 and 274.  Petitioners knew or should have known that they had to substantiate the deductions they claimed and had to establish both the amount and business, as opposed to personal, nature of the expenditures.  Accordingly, respondent's determination is sustained.

We have considered the other arguments of the parties, and they are either without merit or not necessary in view of our resolution of the issues in this case.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.